IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAWURAYRASSUNA EMMANUEL | : | CIVIL ACTION |
| NOVIHO | : | NO. 15-CV-03151 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LANCASTER COUNTY | : | |
| PENNSYLVANIA | : | |
| SCOTT F. MARTIN | : | |
| TODD E. BROWN | : | (ELECTRONICALLY FILED) |
| CHRISTOPHER DISSINGER | : | |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

## ORDER

**AND NOW,** this _____ day of _____, 2015 upon consideration of

Defendants Lancaster County, Scott F. Martin, and Todd E. Brown (collectively "Lancaster

County Defendants")'s Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6), and any response thereto, it is hereby ORDERED that said Motion to

Dismiss is GRANTED and Plaintiff's Complaint is hereby dismissed with prejudice.

_____
                                                              J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MAWURAYRASSUNA EMMANUEL NOVIHO | : | CIVIL ACTION NO. 15-CV-03151 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LANCASTER COUNTY | : | |
| PENNSYLVANIA | : | |
| SCOTT F. MARTIN | : | |
| TODD E. BROWN | : | (ELECTRONICALLY FILED) |
| CHRISTOPHER DISSINGER | : | |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

**DEFENDANTS LANCASTER COUNTY, SCOTT F. MARTIN, AND TODD E.
BROWN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendants Lancaster County, County Commissioner Scott F. Martin, and Assistant

District Attorney Todd E. Brown (collectively "Lancaster County Defendants") by and through

their undersigned counsel, The MacMain Law Group, LLC, hereby move This Court for an

Order dismissing Plaintiff's Complaint in accordance with Federal Rule of Civil Procedure

12(b)(6) on the basis of Plaintiff's failure to state a claim upon which relief may be granted. The

grounds of this Motion are more fully set forth in the accompanying Brief in Support of The

Lancaster County Defendants' Motion.

WHEREFORE, the Lancaster County Defendants respectfully request that this Honorable

Court dismiss with prejudice Plaintiff's Complaint as to all claims, and enter an Order in the

form attached hereto.

**THE MACMAIN LAW GROUP, LLC**

Dated: <u>August 31, 2015</u>

By:    <u>/s/ David J. MacMain</u>
David J. MacMain
Attorney I.D. No. 59320
Megan Kampf
Attorney I.D. No. 88027
101 Lindenwood Drive, Suite 160
Malvern, PA 19355
*Attorney for Defendants*
*Lancaster County Pennsylvania, Scott F.*
*Martin, and Todd E. Brown*

## CERTIFICATE OF SERVICE

I, David J. MacMain, Esquire, hereby certify that on this 31st day of August, 2015, the

foregoing *Motion to Dismiss Plaintiff's Complaint* was filed electronically and is available for

viewing and downloading from the United States District Court for the Eastern District of

Pennsylvania. The following party was served via the ECF system:

George A. Reihner
Wright & Reihner P.C.
148 Adams Avenue
Scranton, PA 18503
gareihner@wrightreihner.com
*Counsel for Plaintiff*

Rolf E. Kroll
Margolis Edelstein
3510 Trindle Road
Camp Hill, PA 17011
rkroll@margolisedelstein.com
*Counsel for Defendant Christopher Dissinger*

### THE MACMAIN LAW GROUP, LLC

Dated: August 31, 2015          By:   /s/ David J. MacMain
                                      David J. MacMain
                                      Attorney I.D. No. 59320
                                      Megan K. Kampf
                                      Attorney I.D. No. 88027
                                      101 Lindenwood Drive, Suite 160
                                      Malvern, PA 19355
                                      *Attorney for Defendants*
                                      *Lancaster County Pennsylvania, Scott F.*
                                      *Martin, and Todd E. Brown*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAWURAYRASSUNA EMMANUEL  :  CIVIL ACTION
NOVIHO         :  NO. 15-CV-03151
            :
   Plaintiff,     :
            :
  v.         :
            :
LANCASTER COUNTY    :
PENNSYLVANIA      :
SCOTT F. MARTIN     :
TODD E. BROWN      :  (ELECTRONICALLY FILED)
CHRISTOPHER DISSINGER   :
            :
   Defendants.    :  JURY TRIAL DEMANDED

**BRIEF IN SUPPORT OF DEFENDANTS
LANCASTER COUNTY, SCOTT F. MARTIN, AND TODD E. BROWN'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

   Defendants Lancaster County, Lancaster County Commissioner Scott F. Martin and

Assistant District Attorney (ADA) Todd Brown (collectively "Defendants" or "Lancaster County

Defendants") move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss

Plaintiff's Complaint (Doc. No. 1) with prejudice because it fails to set forth a legally viable

claim upon which relief can be granted.

   As set forth herein, Plaintiff brings the present threshold §1983 unlawful seizure /

wrongful arrest / false imprisonment claim ADA Brown (Count II), derivative 'conspiracy

claims against ADA Brown and Commissioner Martin (Counts IV and V), and a derivative

*Monell* claim against Lancaster County (Count IV).

   As discussed below and Plaintiff's hyperbole aside, Plaintiff contends, in truth, that even

though he violated the law, was found guilty of three traffic violations that caused a fatal

1

accident that killed a father and his two year old son when Plaintiff – a truck driver trainee – pulled his unlit truck tractor into highway traffic, where it was both not visible in the darkened night and was travelling 17.5 m.p.h. on a 65 m.p.h. highway, the other driver should have also been charged because she had a history of drug addiction.  This contention, even if true, has absolutely nothing to do with Plaintiff's actions and guilt, nor does it undercut in any way the fact that Plaintiff's conviction bars, as a matter of law, his present threshold unlawful seizure claim under the *Heck* favorable termination rule.  Namely, under *Heck v. Humphrey*, 512 U.S. 477 (1994), and resulting case law, "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings."  See e.g., *Gilles v. Davis,* 427 F.3d 197, 208-09 (3d Cir. 2005) and *Kokinda v. Breiner*, 557 F.Supp.2d 581, 592 (M.D. Pa. 2008).  That is exactly what Plaintiff is attempting to do here – do an end-run around his own guilt, by making scurrilous and wholly unfounded allegations against a non-party – Katie West (whose husband and 2 year old son were killed), her brother – Commissioner Scott Martin, the investigating Officer – co-defendant Detective Dissinger, and the prosecutor – ADA Brown who prosecuted Plaintiff.  Plaintiff knows, or should well know, that these allegations are both irrelevant to the claims for which he was found guilty, and are also false and are being made in violation of Rule 11 of the Federal Rules of Civil Procedure[1].

---

[1] It is noteworthy that Plaintiff's Complaint, when making some of the most egregious accusations, prefaces them by the frequent use of "upon information and belief."  While the use of this phrase – which is 'code' for 'I really have no facts to support my assertion' - may be permissible in some instances, such repeated and vitriolic defamatory statements throughout Plaintiffs Complaint does not pass Rule 11 muster in this case. Namely, Plaintiff and his counsel should be well aware that there is no basis for many of the 'upon information and belief' facts contained in their complaint.  Namely, there has been substantial discovery in the case brought by Katie West against C.R. England and (present) Plaintiff Noviho which was filed over a year ago on August 19, 2014. See, *West v. CR England. Inc, U.S.D.C. for E.D. of Pa. – 5:14-cv-04872 – EGS*. Discovery in the *West* case has included the production of thousands of e-mails and documents from various Lancaster County officials including Commissioner Martin, and numerous depositions. None of these countless documents contain a **shred of evidence** of the alleged 'conspiracy,' 'undue influence,' or 'political power-wielding' tale

## I. INTRODUCTION, SUMMARY OF FACTS AND PROCEDURAL HISTORY

As discussed herein, the present suit arises from a fatal motor vehicle accident that occurred on November 12, 2012 at 6:50 p.m. in the Northbound direction of Route 222 in Manheim Township when Plaintiff, a trainee driver with CR England Trucking, Inc., accompanied by a trainer driver from the trucking company who was sitting in the passenger seat, pulled his truck tractor into highway traffic from a dead stop on the shoulder of the highway - lights out - at a slow rate of speed. Tragically, non-party Katie West, who was driving her husband and two small children in her 1996 Volkswagon Passat, did not see, and could not stop in time, to avoid collision with the darkened truck that had just pulled into her lane of traffic travelling at 17.5 m.p.h. on the 65 m.p.h. highway and a violent collision ensued which caused the death of West's husband and 2 year old son.

Despite Plaintiff's scurrilous allegations, the accident was thoroughly and fairly investigated and researched by numerous persons over several months (by both law enforcement and representatives of the Plaintiff's trucking company, their lawyers and agents); many witnesses were interviewed; and scientific testing and accident reconstruction efforts were conducted.

The end result of the accident investigation were the following simple, unassailable and uncontested facts – which Plaintiff concedes in his Complaint (Doc. No. 1):

---

that Plaintiff Noviho weaves in his Complaint. and bases his claims. Equally interesting, Noviho has refused to cooperate in the discovery process in *West,* including refusing to be deposed. As such, the parties are currently negotiating the extent of the 'adverse interest' that will be assessed against Mr. Noviho should the case reach trial. *See, e.g. West,* Document Numbers 62 and 68.

- A mere 16 seconds before the collision, Plaintiff and his truck tractor, were at a **complete stop** on the right hand shoulder of Highway 22. See, Plaintiff's Complaint, paras. 14-15.

- Plaintiff pulled his truck tractor on to the highway – which had a speed limit of 65 m.p.h. – and was **travelling 17.5 m.p.h.** – into the lane where West and her family were traveling. See, Plaintiff's Complaint, paras. 15-16, 27.

- One witness – who has no interest in the case and is not alleged to be part of the 'conspiracy' that plaintiff claims – Donald Schlinkman - was traveling in the adjoining lane as West, and observed that "[Plaintiff's truck] was in the process of reentering the road shortly before the crash" and that "[Plaintiff's] truck **did not have any lights on** and was **traveling very slowly.**" See, Plaintiff's Complaint, para. 42.

- West was interviewed and recalled that "something hit her or she hit something that was like black out of nowhere." See, Plaintiff's Complaint, para. 36.

- Plaintiff Noviho was charged with various offenses as a result of the accident, and while the jury, after very lengthy deliberations, could not unanimously agree that Noviho was guilty beyond a reasonable doubt of some of the offenses including vehicular homicide, he was found guilty by the Honorable David L. Ashworth of (1) driving too slow for conditions, (2) failure to use flashing signals, and (3) moving a vehicle unsafely. See, Criminal Docket attached as Exhibit A, and April 7, 2015 Opinion of Judge David L. Ashworth, attached hereto as Exhibit B.

Despite these uncontested facts, Plaintiff filed the present action on June 5, 2015 setting forth several claims against the Lancaster County Defendants and co-defendant Detective

4

Dissinger of the Manheim Township Police Department[2]. As to the Lancaster County

Defendants, Plaintiff sets forth a threshold claim against ADA Brown, and derivative claims

against ADA Brown, Commissioner Martin and Lancaster County as follows:

- Count II - §1983 – against ADA Brown ("in his investigative capacity") for unlawful seizure / wrongful arrest / false imprisonment;

- Count IV - §1983 – against Co-Defendant Dissinger, ADA Brown ("in his investigative capacity") and Commissioner Martin for Conspiracy to commit an unlawful seizure / wrongful arrest / false imprisonment';

- Count V - §1983 – against Co-Defendant Dissinger and Commissioner Martin for conspiracy to commit malicious prosecution; and

- Count VI - §1983 – *Monell* claim against Lancaster County.

As discussed below, Plaintiff's threshold claim – Count II – fails, as do his derivative

conspiracy (Counts IV and V) and *Monell* claims[3]. Namely, as a result of the guilty verdict on

the summary Motor Vehicle Code violations, Defendant cannot now re-litigate his innocence

under the "favorable- termination rule" established by the United States Supreme Court in *Heck*

*v. Humphrey*, 512 U.S. 477 (1994), and adopted by the Third Circuit. See, e.g, *Gilles v. Davis*,

427 F.3d 197, 208-09 (3d Cir. 2005) and *Kokinda v. Breiner*, 557 F.Supp.2d 581, 592 (M.D. Pa.

2008).

## II.    LEGAL STANDARD UNDER RULE 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for

"failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "Rule

---

[2] Notably, this is about the time that Noviho, who is seeking money in the present suit and has made some incredibly defamatory statements against a host of persons beyond just the present defendants, began to refuse to cooperate in the suit against him. One wonders if the present suit is actually being pursued by Noviho or the trucking company CR England as means to deflect blame and exposure, and obtain leverage in the *West* suit?
[3] Co-Defendant Dissinger filed a motion to dismiss on July 17, 2015 (Doc. No. 12-3). The Lancaster County Defendants incorporate by reference the legal arguments made therein as many are equally applicable to the Lancaster County Defendants.

12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue at law." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). The standard requires a plaintiff to plead "enough sufficient facts to state a claim of relief that is plausible on its face." *Twombley*, 127 S. Ct. at 1974. Plaintiffs must have "nudged their claims across the line from conceivable to plausible, or the complaint must be dismissed." Id.

"Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matter of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). See *Pension Benefit Guar. Corp. v. White Consol. Indus, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (explaining that a District Court may take judicial notice of matters of public record without converting the motion into one for summary judgment); and *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 256 n.5 (3d Cir. 2006) ("to resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings."). This is particularly applicable here as Plaintiff seeks to ignore or, at least not call to This Court's attention, (1) his guilty finding in the underlying criminal case, and (2) the other litigation pending before This Court – the Honorable Edward G. Smith.

In determining whether or not a motion to dismiss should be granted, a district court must accept as true the factual allegations in the complaint and construe all reasonable inference in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). However, a Court need not accept a complaint's bald assertions, subjective characterizations, or legal conclusions. *Evancho v. Fischer*, 423 F.3d 347, 351 (3d Cir. 2005).

This is also particularly applicable here as Plaintiff makes a number of 'upon information and belief' assertions which he knows or should know is not true; nor does the Court have to accept as true.

### III.   **LEGAL ARGUMENT**

#### A. Plaintiff's Threshold Claim for Unlawful Seizure/Wrongful Arrest/False Imprisonment (Count II) Fails As A Matter of Law

In Count II, Plaintiff asserts a claim under §1983 for an alleged unlawful seizure / wrongful arrest / false imprisonment against the Defendant ADA Brown who prosecuted the criminal case against him. As he did with many of his factual assertions that are without basis by labeling his facts as being based "upon information and belief", Plaintiff does likewise in labeling the actions of ADA Brown as being in "his investigative capacity." This legal conclusion – which the Court need not accept – is a disingenuous attempt to avoid the absolute prosecutorial immunity that is afforded to prosecutors like ADA Brown. As noted above, Plaintiff should well know from the record developed in the other suit filed against him, that there is no good faith basis for him to allege that ADA Brown did anything other than act as a prosecutor. Indeed, the only way around this absolute prosecutorial immunity is for Plaintiff to weave this baseless and factually unsupported tale of a vast conspiracy involving the named Defendants and the unnamed District Attorney of Lancaster County. Notably, neither of the two key persons - the witness to the accident – Mr. Schlinkman who said that Noviho pulled into the dark highway with his truck tractor lights off, at a slow speed, and directly into the path of an unsuspecting Katie West, and the Honorable David Ashworth who found Plaintiff guilty of three traffic offenses which caused the accident, were apparently in on the conspiracy. Thus, Plaintiff's misguided attempt to label the prosecutorial actions of ADA Brown as "investigatory" to avoid the absolute immunity he is afforded, ought to be rejected and all claims against him dismissed

under the absolute prosecutorial immunity doctrine. See, *Imbler v. Pachtman,* 424 U.S. 409, 431 (1976) ("In initiating a prosecution and presenting the state's case, the prosecutor is immune from a civil suit for damages under §1983").

However, even if the Court accepts this 'label' that Plaintiff uses, and the claim is examined on the merits, it nevertheless fails as a matter of law.

"Whether raised under Section 1983 or state law, claims for false arrest, malicious prosecution, and abuse of process require a lack of probable cause." *Shilling v. Brush*, 2007 WL 210802, *9 (M.D. Pa. Jan. 22, 2007); see also *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.,* 855 F.2d 136, 141 (3d Cir. 1988) (explaining that, in order to prevail on a claim for unlawful arrest pursuant to Section 1983, a plaintiff must prove that the police arrested him without probable cause.) Probable cause exists when "the facts and circumstances are sufficient to warrant a prudent man in believing that the [Plaintiff] had committed or [was] committing an offense."*Egolf v. Witmer*, 526 F.3d 104, 118 (3d Cir. 2008).

While the issue of probable cause is ordinarily determined at the summary judgment stage, in cases such as this, wherein the Plaintiff was convicted of at least one crime for which he was charged and probable cause is established for at least one of the charges, Plaintiff is precluded from bringing the cause of action under the "favorable termination" rule developed by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* limits claims available under §1983 for plaintiffs who either are found guilty or plead guilty to criminal charges. The Court specifically stated:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . .A claim for damages bearing that

relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.

Id. at 486-87. The Third Circuit has, in turn, interpreted *Heck* to mean that "a §1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." *Gilles v. Davis*, 427 F.3d 197, 208-209 (3d Cir. 2005).

In *Kokinda v. Breiner*, 557 F.Supp.2d 581, 592 (M.D. Pa. 2008) - a case with a similar underlying criminal history to the present case – the *Heck* bar was applied to preclude a §1983 false arrest claim. Specifically, the Plaintiff in *Kokinda* asserted a false arrest claim and argued in response to a motion to dismiss that he was convicted of 'merely a summary offense' and thus he was not permissibly taken into custody (i.e. arrested) under the Pennsylvania Rules of Criminal Procedure[4]. The Honorable Richard Caputo of the Middle District rejected this argument, applied the *Heck* doctrine, and granted Defendants motion to dismiss Plaintiff's false arrest claim. The Court held that a guilty plea – even for a 'minor' or 'summary' offense - necessarily required a finding of probable cause, and thus, served as a bar to Plaintiff's false arrest claims. See, also, *Kosler v. Crisanti*, 564 F.3d 181 (3d Cir. 2009)(even though Plaintiff acquitted of serious felony and misdemeanor charges, his conviction for summary offense and fine of $100 barred his false arrest claim under *Heck* favorable termination bar).

In the present matter, a jury, after lengthy deliberations, could not unanimously agree that Plaintiff was guilty beyond a reasonable doubt of the most serious offenses. Yet, Plaintiff was found guilty of three summary traffic offenses for which he was charged. As such, there was probable cause for three of the charged offenses and Plaintiff's claims are barred under the *Heck*

---

[4] This is one of the exact arguments that Plaintiff made in opposition to Co-Defendant Dissinger's Motion to Dismiss – namely, that the summary offenses were minor offenses and not 'arrest-able' charges. See, Plaintiff's Opposition Brief (Doc. No. 16) pp. 11-13.

preclusion doctrine. Accordingly, Plaintiff's claim for unlawful seizure / wrongful arrest / false imprisonment as asserted against ADA Brown in Count II fails as a matter of law and must be dismissed.

It is worth noting that while Plaintiff dresses up his claim as a false arrest claim, it is really grounded on his (or CR England Trucking) objection to investigative findings of the cause of the accident. In other words, Plaintiff and his trucking company employer disagree that the unlit, slow-moving truck that pulled into the highway was the cause of the accident and feel that some or all blame should be place on Katie West. Such a theory – that a poor or even biased accident investigation was conducted – cannot as a matter of law serve as the basis of a §1983 claim. Numerous courts have determined that the filing of a false police report in and of itself is not a constitutional violation, even if the report is the result of an intentional conspiracy or police misconduct. See, e.g., *Jarrett v. Bensalem*, 2008 WL 818615 (E.D. Pa. – Schiller) and 312 Fed. Appx. 505 (3d Cir. 2009), *Bush v. Philadelphia*, No. 98-0994, 1999 WL 554585, at *4 (E.D. Pa. July 15, 1999) (Hart, M.J.); *Landrigan v. Warwick*, 628 F.2d 736, 744 (1st Cir. 1980); *Shock v. Tester*, 405 F.2d 852, 855 (8th Cir. 1969).

In *Jarrett*, Plaintiff truck driver and his employer trucking company brought a claim against an investigating police officer, like co-defendant Detective Dissinger, alleging that his conclusion that the truck driver who pulled out on to U.S. Route 1 at a slow rate of speed and blocked lanes of traffic, much like what occurred here, was the cause of the accident, and not the driver of the pick-up truck who was traveling the highway. The trucking company plaintiff was upset that the other driver – who had been drinking and had empty beers cans in his truck - had not been tested and prosecuted for DUI and/or found at fault for the accident. Plaintiff trucking company alleged that the other driver had some connection with the Bensalem Police

Department, and that the failure to cite him was the result of some nefarious cover-up and a violation of the truck driver and trucking company's constitutional rights. On this basis – the theory that Plaintiff is asserting here – the trucking company and driver brought a §1983 claim. This Court, the Honorable Berle Schiller, and later the Third Circuit, held that even if Plaintiff trucking company's 'conspiracy' theory was true, there was no constitutional right to a certain conclusion by police, nor did Plaintiff have a right to have the other driver investigated, arrested or fault at fault.[5] See, District Court and Third Circuit Opinions attached as Exhibit C collectively.

Likewise, in *Bush*, the plaintiff was involved in an automobile accident with an off-duty police officer. 1999 WL 554585, at *2. Another police officer arrived at the scene to investigate the accident and filed a report that included only information supplied by the off-duty police officer. Id. The investigating officer did not include the plaintiff's account of the accident in the report and placed the blame for the accident on the plaintiff. Id. Additionally, the investigating officer did not issue a citation to the off-duty officer, even though he did not have automobile insurance, a valid inspection sticker, or a proper vehicle registration. Id. Bush brought an action under Section 1983 and claimed that the defendants deprived him of his rights "by preparing and filing a false accident report, by intimidating him, and by failing to enforce the motor vehicle laws" against the off-duty officer. Id. at *3. The court found that the plaintiff's claim that the defendants had performed an inadequate police investigation did not constitute a cognizable injury, explaining that "if the false report itself cannot sustain a civil rights violation, it is hard to

---

[5] Like what is appears to be the case here, the Trucking Company was defending a personal injury action brought by the badly injured pick-up truck driver and conceded that the purpose of the suit against the investigating officer and Township was based on the fact that his conclusions were harmful in defending the suit filed against them. Like what appears to be the case here, it appeared that the driver was just a means or placeholder for the trucking company's suit and had little to no personal interest in his case.

imagine how the investigatory process that produced such a report could do so independently." Id. at *6. The court concluded that "there is no 'fundamental liberty interest' in having police perform a proper, impartial automobile accident investigation. That they should do so is obvious. That the United States Constitution requires them to do so, however, is simply wrong." Id. at *7.

Similarly, in *Moser v. Exeter Township*, the Honorable Ronald L. Buckwalter was presented with a claim in which a plaintiff brought suit against police officers under Section 1983 and alleged, among other things, that the officers "'intentionally, maliciously, and deliberately' wrote an accident report minimizing the severity of the accident" and "did not cite [the driver of the other car] for any traffic violations or bring criminal charges against her, 'due to his personal relationship' with her." No. 98-3525, 1998 WL 575109, at *3 (E.D. Pa. Sept. 4, 1998). The plaintiff further alleged that another officer "acting intentionally, maliciously and deliberately approved the 'false and factually misleading' accident report" and took no action against the driver of the other car. Id. The court granted the defendants' motion to dismiss because the plaintiff's "allegations fail to implicate federal rights" under Section 1983, nor did the plaintiff allege that he suffered any harm as a result of the defendants' actions. Id.

In sum, whether Plaintiff labels his claim as a false arrest, malicious prosecution or violation of his due process rights – the genesis and factual predicate of the claim – that the prosecution was unfair, biased, flawed – fails. Rather, such a claim, regardless of the label, fails as a matter of law and must be dismissed.

### B. Plaintiff's Conspiracy - Unlawful Seizure (Count IV), and Conspiracy – Malicious Prosecution (Count V) Fail as a Matter of Law

In Count IV of his Complaint, and County V of his Complaint, Plaintiff asserts a claims under §1983 for conspiracy to unlawful seize him and maliciously prosecute him respectively as against Commissioner Martin, ADA Brown, and Co-Defendant Detective Dissinger.

These two claim fails for multiple reasons.

First, as discussed above, and in Co-Defendant Dissinger's Brief, given that there was probable cause for the three traffic offenses – as demonstrated by the guilty conviction – Plaintiff's threshold false arrest / malicious prosecution / false arrest claim fails. Thus, if there is no constitutional violation in the first place, then there can be no derivative claim for a conspiracy to commit a constitutional violation.

Second, "a general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action." *Black & Yates v. Mahogany Ass'n*, 129 F.2d 227, 231 (3d Cir. 1941); *see also Heath v. Shannon*, No. 4:CV-04-2275, 2006 U.S. Dist. LEXIS 17037, *1, *8-*9 (M.D. Pa. Feb. 17, 2006) (Jones, J.) ("In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.") (citing *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992), *cert. denied*, 506 U.S. 1079 (1993); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989)). Moreover, "to plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989).

In order to state a claim for conspiracy, "[a] plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal

right." *Heath*, 2006 U.S. Dist. LEXIS 17037 at \*9-\*10 (citing *D.R.*, 972 F.2d at 1377; *Rose*, 871 F.2d at 366; *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991); *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539 (E.D. Pa. 1982). "Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. A plaintiff cannot rely on subjective suspicions and unsupported speculation." *Id.* (citations omitted).

And yet, that is exactly what Plaintiff has done here. He asserts that Commissioner Martin and Detective Dissinger were high school friends and acquainted on social media and thus implies that 'there must have been a conspiracy'. He further claims that Commissioner Martin and ADA Brown's boss were political allies, and thus 'there must have been a conspiracy.' This falls far short of the specificity required to asset a conspiracy. Further, if there was any such evidence of a conspiracy as alleged by Plaintiff, one would surely expect that Plaintiff would present such evidence in his complaint – not present shameless, defamatory innuendo and rank speculation. This is especially so given that there has been substantial discovery in the *West* case in which Noviho is a party, as is his employer CR England Trucking, Inc. and no doubt, there would have been something specific in the year-long discovery that Plaintiff could point to if any such evidence existed. Plaintiff does not – as no such 'conspiracy' occurred.

In truth, the allegations in Plaintiff's Complaint are nothing more than the "subjective suspicions and unsupported speculation" that are specifically prohibited. *Heath*, 2006 U.S. Dist. LEXIS 17037 at \*9-\*10. "Without such factual allegations, the rote pleading of 'conspiracy' is insufficient to state a claim," *Waris v. Mackey*, Civ. A. No. 09-1103, 2009 U.S. Dist. LEXIS 116961, \*1, \*37-\*38 (E.D. Pa. Dec. 14, 2009) (Kugler, J.) (citing *Twombly*, 550 U.S. at 544) (dismissing complaint alleging conspiracy where not enough factual allegations to show an

14

agreement was made), and Plaintiff's conspiracy claims – Count IV and V should be dismissed

### C. Plaintiff's *Monell* Claim (Count VI) Fails as a Matter of Law

Plaintiff's final claim – Count VI - is also derivative of his threshold unlawful arrest / malicious prosecution claims. Namely, Plaintiff asserts a claim against Lancaster County under a *Monell* theory of liability alleging that Commissioner Martin is a 'policy-maker' for the County. This claim fails for multiple reasons.

Derivatively, in order to establish liability under Section 1983 against a local government unit, such as Lancaster County, Plaintiff must demonstrate: (1) the deprivation of a constitutional right; (2) that action was taken pursuant to a custom or policy of the local government unit; and (3) that such action was the cause of the deprivation. *Monell v. Department of Social Svcs.*, 436 U.S. 658, 691 (1978); *Brown v. Commonwealth of Pennsylvania Dep't of Health Emergency Med. Svcs.*, 318 F.3d. 473 (3d Cir. 2003).

As discussed in the preceding sections, Plaintiff has failed to properly plead the first and seminal element of his derivative *Monell* claim - a constitutional violation. Indeed, it is well-settled that, if there was no violation in the first place, then there can be no derivative municipal or supervisory claim. *See Collins v. City of Harker Heights*, 503 U.S. 115, 123 (1992) (holding that a city may be liable for a policy or custom of failing to train its employees only "if a city employee violates another's constitutional rights."); *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); *Marasco*, 318 F.3d at 505 ("[T]he initial question in a section 1983 action is 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"); *Nardini v. Hackett*, Civil Action No. 00-5038, 2001 U.S. Dist.

LEXIS 15896, *1, *22-*23 (E.D. Pa. Sept. 19, 2001) (Surrick, J.) (dismissing *Monell* claim

where the Court found no underlying constitutional violation by the individual officers). Since

there was no underlying constitutional violation, Plaintiff's derivative § 1983 *Monell* claim -

Count VI - against the County of Lancaster also fails[6].

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Complaint against Defendants

Lancaster County, Commissioner Martin, and ADA Brown should be dismissed pursuant to

Fed.R.Civ.P. 12(b)(6), with prejudice, for failure to state a claim upon which relief may be

granted.

If Defendants' Motion is granted, they reserve the right to seek fees and sanctions under,

*inter alia*, 42 U.S.C. 1988, Rule 11 of the Federal Rules of Civil Procedure, and 28 U.S.C.

§1927.


Respectfully submitted,



Dated: August 31, 2015 _____            /s/ David J. MacMain _____
                                                                     David J. MacMain, Esquire
                                                                     Attorney ID # 59320
                                                                     Megan K. Kampf, Esquire
                                                                     Attorney ID # 88027
                                                                     The MacMain Law Group, LLC
                                                                     101 Lindenwood Drive, Suite 160
                                                                     Malvern, PA 19355
                                                                     Dmacmain@macmainlaw.com
                                                                     Phone (484) 318 7703

---

[6] Plaintiff also fails to provide any support for his legal conclusion that Commissioner Martin – as one of three County Commissioners – can set policy for the County. Rather, any County decision would require a majority vote of at least two Commissioners. Plaintiff would additional have to show that another Commissioner was in on the conspiracy.

I, David J. MacMain, Esquire, hereby certify that on this 31st day of August, 2015, the

foregoing *Motion to Dismiss Plaintiff's Complaint* was filed electronically and is available for

viewing and downloading from the United States District Court for the Eastern District of

Pennsylvania. The following party was served via the ECF system:

> George A. Reihner
> Wright & Reihner P.C.
> 148 Adams Avenue
> Scranton, PA 18503
> gareihner@wrightreihner.com
> *Counsel for Plaintiff*

> Rolf E. Kroll
> Margolis Edelstein
> 3510 Trindle Road
> Camp Hill, PA 17011
> rkroll@margolisedelstein.com
> *Counsel for Defendant Christopher Dissinger*

**THE MACMAIN LAW GROUP, LLC**

Dated: August 31, 2015            By:      /s/ David J. MacMain
                                            David J. MacMain
                                            Attorney I.D. No. 59320
                                            Megan K. Kampf
                                            Attorney I.D. No. 88027
                                            101 Lindenwood Drive, Suite 160
                                            Malvern, PA 19355
                                            *Attorney for Defendants*
                                            *Lancaster County Pennsylvania, Scott F.*
                                            *Martin, and Todd E. Brown*

17

# EXHIBIT "A"

# EXHIBIT "A"

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



**Docket Number: CP-36-CR-0004200-2013**

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 1 of 9

Cross Court Docket Nos: 394 MDA 2015

| | | |
|---|---|---|
| Judge Assigned: Ashworth, David L. | Date Filed: 09/11/2013 | Initiation Date: 06/07/2013 |
| OTN: T 336034-6    LOTN: | Originating Docket No: MJ-02102-CR-0000227-2013 | |
| Initial Issuing Authority: David P. Miller | Final Issuing Authority: | |
| Arresting Agency: Manheim Twp Police Dept | Arresting Officer: Dissinger, Christopher M. | |
| Complaint/Incident #: 2012MT10942 | | |
| Case Local Number Type(s) | Case Local Number(s) | |

| Case Status: Closed | Status Date | Processing Status | Complaint Date: 06/07/2013 |
|---|---|---|---|
| | 02/26/2015 | Awaiting Appellate Court Decision | |
| | 01/27/2015 | Sentenced/Penalty Imposed | |
| | 01/27/2015 | Awaiting Sentencing | |
| | 10/01/2014 | Awaiting Trial | |
| | 11/13/2013 | Awaiting Pre-Trial Conference | |
| | 09/27/2013 | Awaiting Formal Arraignment | |
| | 09/11/2013 | Awaiting Filing of Information | |

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Formal Arraignment | 09/27/2013 | 9:00 am | Courtroom A | | Cancelled |
| Status Conference | 11/12/2013 | 9:00 am | Courtroom TBD | | Cancelled |
| Pretrial Conference | 12/23/2013 | 9:00 am | Courtroom TBD | | Continued |
| Pretrial Conference | 02/10/2014 | 9:00 am | Courtroom TBD | | Continued |
| Pretrial Conference | 05/12/2014 | 9:30 am | Courtroom 2 | Judge Joseph C. Madenspacher | Cancelled |
| Criminal Trial | 11/03/2014 | 9:00 am | Courtroom 12 | Judge David L. Ashworth | Scheduled |

| Date Of Birth: | 12/20/1990 | City/State/Zip: Newport News, VA 23608 |
|---|---|---|

Alias Name
Noviho, Johnspider

| Participant Type | Name |
|---|---|
| Defendant | Noviho, Mawuyrayrassuna Emmanuel Yaogan |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY

**DOCKET**



Docket Number: CP-36-CR-0004200-2013

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 2 of 9

**INFORMATION**

Noviho, Mawuyrayrassuna Emmanuel Yaogan

Nebbia Status: None

| Bail Action | | Date | Bail Type | Percentage | Amount | | |
|---|---|---|---|---|---|---|---|
| | | | | | | Bail Posting Status | Posting Date |
| Set | | 06/28/2013 | Unsecured | | $20,000.00 | | |

**CHARGES**

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Dt. | OTN |
|---|---|---|---|---|---|---|
| 1 | 1 | F3 | 75 § 3732 §§A | Homicide By Vehicle | 11/12/2012 | T 336034-6 |
| 2 | 2 | F3 | 75 § 3732 §§A | Homicide By Vehicle | 11/12/2012 | T 336034-6 |
| 3 | 3 | F3 | 75 § 3732.1 §§A | Aggravated assault by vehicle | 11/12/2012 | T 336034-6 |
| 4 | 4 | S | 75 § 4302 §§A1 | Period For Requiring Lighted Lamps | 11/12/2012 | T 336034-6 |
| 5 | 5 | S | 75 § 3364 §§A | Too Slow For Conditions | 11/12/2012 | T 336034-6 |
| 6 | 6 | S | 75 § 3364 §§B1 | Slow moving vehicle to drive off roadway | 11/12/2012 | T 336034-6 |
| 7 | 7 | S | 75 § 4305 §§C | Use Below Minimum Speed Limit | 11/12/2012 | T 336034-6 |
| 8 | 8 | S | 75 § 3333 | Move Vehicle Unsafely | 11/12/2012 | T 336034-6 |

**DISPOSITION SENTENCING/PENALTIES**

| Disposition | | | | |
|---|---|---|---|---|
| Case Event | | Disposition Date | Final Disposition | |
| Sequence/Description | | Offense Disposition | Grade | Section |
| Sentencing Judge | | Sentence Date | | Credit For Time Served |
| Sentence/Diversion Program Type | | Incarceration/Diversionary Period | | Start Date |
| Sentence Conditions | | | | |

| Held for Court (Lower Court) | Defendant Was Present | | | |
|---|---|---|---|---|
| Lower Court Disposition | | 09/05/2013 | Not Final | |
| 1 / Homicide By Vehicle | | Held for Court (Lower Court) | F3 | 75 § 3732 §§ A |
| 2 / Homicide By Vehicle | | Held for Court (Lower Court) | F3 | 75 § 3732 §§ A |
| 3 / Aggravated assault by vehicle | | Held for Court (Lower Court) | F3 | 75 § 3732.1 §§ A |
| 4 / Period For Requiring Lighted Lamps | | Held for Court (Lower Court) | S | 75 § 4302 §§ A1 |
| 5 / Too Slow For Conditions | | Held for Court (Lower Court) | S | 75 § 3364 §§ A |
| 6 / Slow moving vehicle to drive off roadway | | Held for Court (Lower Court) | S | 75 § 3364 §§ B1 |
| 7 / Use Below Minimum Speed Limit | | Held for Court (Lower Court) | S | 75 § 4305 §§ C |
| 8 / Move Vehicle Unsafely | | Held for Court (Lower Court) | S | 75 § 3333 |
| Proceed to Court | Defendant Was Not Present | | | |
| Information Filed | | 09/27/2013 | Not Final | |
| 1 / Homicide By Vehicle | | Held for Court | F3 | 75 § 3732 §§ A |
| 2 / Homicide By Vehicle | | Held for Court | F3 | 75 § 3732 §§ A |
| 3 / Aggravated assault by vehicle | | Held for Court | F3 | 75 § 3732.1 §§ A |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



**Docket Number: CP-36-CR-0004200-2013**

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 3 of 9

## Disposition

| Case Event | Disposition Date | Final Disposition | |
|---|---|---|---|
| Sequence/Description | Offense Disposition | Grade | Section |
| Sentencing Judge | Sentence Date | | Credit For Time Served |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | | Start Date |
| Sentence Conditions | | | |
| 4 / Period For Requiring Lighted Lamps | Held for Court | S | 75 § 4302 §§ A1 |
| 5 / Too Slow For Conditions | Held for Court | S | 75 § 3364 §§ A |
| 6 / Slow moving vehicle to drive off roadway | Held for Court | S | 75 § 3364 §§ B1 |
| 7 / Use Below Minimum Speed Limit | Held for Court | S | 75 § 4305 §§ C |
| 8 / Move Vehicle Unsafely | Held for Court | S | 75 § 3333 |
| **Guilty** | | | |
| Trial | 01/27/2015 | Final Disposition | |
| 1 / Homicide By Vehicle | Not Guilty | F3 | 75 § 3732 §§ A |
| Ashworth, David L. | 01/27/2015 | | |
| 2 / Homicide By Vehicle | Not Guilty | F3 | 75 § 3732 §§ A |
| Ashworth, David L. | 01/27/2015 | | |
| 3 / Aggravated assault by vehicle | Not Guilty | F3 | 75 § 3732.1 §§ A |
| Ashworth, David L. | 01/27/2015 | | |
| 4 / Period For Requiring Lighted Lamps | Not Guilty | S | 75 § 4302 §§ A1 |
| Ashworth, David L. | 01/27/2015 | | |
| 5 / Too Slow For Conditions | Guilty | S | 75 § 3364 §§ A |
| Ashworth, David L. | 01/27/2015 | | |
| No Further Penalty | | | |
| 6 / Slow moving vehicle to drive off roadway | Withdrawn | S | 75 § 3364 §§ B1 |
| Ashworth, David L. | 01/27/2015 | | |
| 7 / Use Below Minimum Speed Limit | Guilty | S | 75 § 4305 §§ C |
| Ashworth, David L. | 01/27/2015 | | |
| No Further Penalty | | | |
| 8 / Move Vehicle Unsafely | Guilty | S | 75 § 3333 |
| Ashworth, David L. | 01/27/2015 | | |
| No Further Penalty | | | |

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



**Docket Number: CP-36-CR-0004200-2013**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 4 of 9

| | | |
|---|---|---|
| Name: | Todd Everett Brown | |
| | Assistant District Attorney | |
| Supreme Court No: | 083914 | |
| Phone Number(s): | | |
| 717-299-8100 | (Phone) | |
| Address: | | |
| Lancaster CO Da's Ofc | | |
| 50 N Duke St | | |
| Lancaster, PA  17602-2805 | | |

| | |
|---|---|
| Name: | Richard Hristos Katsifis |
| | Private |
| Supreme Court No: | 314858 |
| Rep. Status: | Active |
| Phone Number(s): | |
| 717-232-1851 | (Phone) |
| Address: | |
| Kilian & Gephart Llp | |
| PO Box 886 | |
| Harrisburg, PA  17108-0886 | |

Representing: Noviho, Mawuyrayrassuna Emmanuel
Yaogan

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 06/28/2013 | | Miller, David P. |
| Bail Set - Noviho, Mawuyrayrassuna Emmanuel Yaogan | | | |
| 1 | 09/11/2013 | | Court of Common Pleas - Lancaster County |
| Original Papers Received from Lower Court | | | |
| 1 | 09/27/2013 | | Commonwealth of Pennsylvania |
| Information Filed | | | |
| 1 | 11/12/2013 | | Miller, Margaret C. |
| Order - Status, Relist for Pretrial Conference | | | |
| 2 | 11/12/2013 | | Daniels, Robert James Jr. |
| Entry of Appearance | | | |
| 1 | 12/23/2013 | | Madenspacher, Joseph C. |
| Status Order Filed | | | |
| 1 | 12/24/2013 | | Daniels, Robert James Jr. |
| Motion for Continuance | | | |
| 2 | 12/24/2013 | | Madenspacher, Joseph C. |
| Order Granting Motion for Continuance | | | |

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial
System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed
data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can
only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record
Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



**Docket Number: CP-36-CR-0004200-2013**

## CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

Page 5 of 9

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 02/10/2014 | | Knisely, Howard F. |
| Order - Status, Continued on Defendant | | | |
| 2 | 02/11/2014 | | Daniels, Robert James Jr. |
| Motion for Continuance | | | |
| 3 | 02/11/2014 | | Knisely, Howard F. |
| Order Granting Motion for Continuance | | | |
| 1 | 05/12/2014 | | Madenspacher, Joseph C. |
| List For Trial | | | |
| 3 | 05/14/2014 | | Daniels, Robert James Jr. |
| Motion for Continuance | | | |
| 4 | 05/14/2014 | | Madenspacher, Joseph C. |
| Order Granting Motion for Continuance | | | |
| 1 | 09/29/2014 | | Ashworth, David L. |
| Order, Jury Trial Scheduled for week of 11/3/14 in CR12 | | | |
| 1 | 10/14/2014 | | Daniels, Robert James Jr. |
| Unopposed Motion For Continuance | | | |
| 1 | 10/31/2014 | | Daniels, Robert James Jr. |
| Motion for Continuance | | | |
| 2 | 10/31/2014 | | Ashworth, David L. |
| Order Granting Motion for Continuance | | | |
| 1 | 12/18/2014 | | Katsifis, Richard Hristos |
| Entry of Appearance | | | |
| 1 | 01/06/2015 | | Katsifis, Richard Hristos |
| Motion To Release Criminal History Records | | | |
| 1 | 01/07/2015 | | Ashworth, David L. |
| Order Granting Motion for Release of Criminal History recordes to Defense counsel | | | |

CPCMS 9082

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial
System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed
data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can
only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record
Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



**Docket Number: CP-36-CR-0004200-2013**

# CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 6 of 9

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 01/21/2015 | | Brown, Todd Everett |
| Commonwealth's Motion in Limine | | | |
| 1 | 01/27/2015 | | Ashworth, David L. |
| Guilty | | | |
| Defendant is to pay all financial obligations | | | |
| 2 | 01/27/2015 | | Ashworth, David L. |
| Order - Sentence/Penalty Imposed | | | |
| 3 | 01/27/2015 | | Daniels, Robert James Jr. |
| Defenant's Proposed Jury Instructions | | | |
| 1 | 01/29/2015 | | Parsons, Joshua G. |
| DL-21 to be Prepared | | | |
| 1 | 02/03/2015 | | Court of Common Pleas - Lancaster County |
| Penalty Assessed | | | |
| 1 | 02/06/2015 | | Parsons, Joshua G. |
| DL-21 was prepared | | | |
| 1 | 02/09/2015 | | Unknown Filer |
| DL-21 Sent to PennDOT | | | |
| 1 | 02/26/2015 | | Daniels, Robert James Jr. |
| Notice of Appeal to the Superior Court | | | |
| 1 | 03/02/2015 | | Ashworth, David L. |
| Concise Statement Order | | | |
| 1 | 03/10/2015 | | Superior Court of Pennsylvania - Middle District |
| Docketing Statement from Superior Court | | | |
| 1 | 03/15/2015 | | Ashworth, David L. |
| Transcript of Jury Trial Vol. 1-6 | | | |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial
System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed
data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can
only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record
Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY

DOCKET



Docket Number: CP-36-CR-0004200-2013
## CRIMINAL DOCKET
Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 7 of 9

ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 03/23/2015 | | Ashworth, David L. |
| Concise Statement of Errors Complained on Appeal | | | |
| 1 | 04/07/2015 | | Ashworth, David L. |
| Opinion | | | |
| 1 | 04/09/2015 | | Lancaster County Clerk of Courts |
| Index of Record | | | |
| 2 | 04/09/2015 | | Lancaster County Clerk of Courts |
| Original Record Sent | | | |

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



**Docket Number: CP-36-CR-0004200-2013**
**CRIMINAL DOCKET**

Court Case

Commonwealth of Pennsylvania
v.
Mawuyrayrassuna Emmanuel Yaogan Noviho

Page 8 of 9

Last Payment Date: 02/26/2015

Total of Last Payment: -$70.50

| Noviho, Mawuyrayrassuna Emanuel Yaogan | Assessment | Payments | Adjustments | Non Monetary Payments | Total |
|---|---|---|---|---|---|
| **Costs/Fees** | | | | | |
| Miscellaneous Issuances | $16.50 | $0.00 | $0.00 | $0.00 | $16.50 |
| ATJ | $3.00 | $0.00 | $0.00 | $0.00 | $3.00 |
| CAT/MCARE/General Fund | $30.00 | $0.00 | $0.00 | $0.00 | $30.00 |
| CAT/MCARE/General Fund | $30.00 | $0.00 | $0.00 | $0.00 | $30.00 |
| CAT/MCARE/General Fund | $30.00 | $0.00 | $0.00 | $0.00 | $30.00 |
| CJES | $2.25 | $0.00 | $0.00 | $0.00 | $2.25 |
| Clerk Cost (Non-Jury/Guilty Plea) -6411AB1211 (Lan) | $132.00 | $0.00 | $0.00 | $0.00 | $132.00 |
| Clerk of Court Auto Fee-Costs 6593AAB1211 (Lan) | $5.00 | $0.00 | $0.00 | $0.00 | $5.00 |
| Commonwealth Cost - HB627 (Act 167 of 1992) | $8.25 | $0.00 | $0.00 | $0.00 | $8.25 |
| County Court Cost (Act 204 of 1976) | $20.50 | $0.00 | $0.00 | $0.00 | $20.50 |
| DA Administration Fee - 6421AB130019021 (Lan) | $25.00 | $0.00 | $0.00 | $0.00 | $25.00 |
| DA Cost - Summary - 6411AB1211 (Lancaster) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| Emergency Medical Services (Act 45 of 1985) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| Emergency Medical Services (Act 45 of 1985) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| Emergency Medical Services (Act 45 of 1985) | $10.00 | $0.00 | $0.00 | $0.00 | $10.00 |
| JCPS | $10.25 | $0.00 | $0.00 | $0.00 | $10.25 |
| Judicial Computer Project | $8.00 | $0.00 | $0.00 | $0.00 | $8.00 |
| Sheriff Cost - Summary - 6411AB1211 (Lancaster) | $2.00 | $0.00 | $0.00 | $0.00 | $2.00 |
| State Court Costs (Act 204 of 1976) | $8.25 | $0.00 | $0.00 | $0.00 | $8.25 |
| Prosecution Cost - 6411AB1211 (Lancaster) | $5.70 | $0.00 | $0.00 | $0.00 | $5.70 |
| Sealed Entry on Public Docket | $4.65 | $0.00 | $0.00 | $0.00 | $4.65 |
| Sealed Entry on Public Docket | $10.85 | $0.00 | $0.00 | $0.00 | $10.85 |
| Witness - 6411AB1211 (Lancaster) | $7.52 | $0.00 | $0.00 | $0.00 | $7.52 |
| Clerk of Court Auto Fee-Filing-6593AAB1211 (Lan) | $5.00 | -$5.00 | $0.00 | $0.00 | $0.00 |

CPCMS 9082

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF LANCASTER COUNTY



**Docket Number: CP-36-CR-0004200-2013**
## CRIMINAL DOCKET
Court Case

Commonwealth of Pennsylvania

v.

Mawuyrayrassuna Emmanuel Yaogan Noviho

**Noviho, Mawuyrayrassuna Emmanuel Yaogan**

| | Assessment | Payments | Adjustments | Non Monetary Payments | Total |
|---|---|---|---|---|---|
| Superior Court Filing Fee - 6444AB1211 (Lan) | $65.50 | -$65.50 | $0.00 | $0.00 | $0.00 |
| Postage | $7.40 | $0.00 | $0.00 | $0.00 | $7.40 |
| Postage | $16.95 | $0.00 | $0.00 | $0.00 | $16.95 |
| Costs/Fees Totals: | $494.57 | -$70.50 | $0.00 | $0.00 | $424.07 |
| **Fines** | | | | | |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Title 75, Motor Vehicle (Motor License Fund) | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 |
| Fines Totals: | $75.00 | $0.00 | $0.00 | $0.00 | $75.00 |
| Grand Totals: | $569.57 | -$70.50 | $0.00 | $0.00 | $499.07 |

** - Indicates assessment is subrogated

Printed: 07/07/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# EXHIBIT "B"

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :

v.                                            :          No. 4200 - 2013

MAWUYRAYRASSUNA EMMANUEL         :
YAOGAN NOVIHO                         :

## ORDER

AND NOW, this 7ᵗʰ day of April, 2015, the Court hereby submits this Opinion

pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

BY THE COURT:

I certify this document to be filed
in the Lancaster County Office of
the Clerk of the Courts.

Joshua G. Parsons
Clerk of the Courts

DAVID L. ASHWORTH
JUDGE

LANCASTER COUNTY, PA          2015 APR -7 PM 2: 01          CLERK OF COURTS

Copies to:    Susan E. Moyer, Assistant District Attorney
              Robert Daniels, Esquire, 218 Pine Street, P.O. Box 886, Harrisburg, PA
              17108-0886

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :

      v.

No. 4200 - 2013

MAWUYRAYRASSUNA EMMANUEL
YAOGAN NOVIHO

## OPINION SUR PA. R.A.P. 1925(a)

BY:   ASHWORTH, J., APRIL 7, 2015

Mawuyrayrassuna Emmanuel Yaogan Noviho has filed a direct appeal to the

Superior Court of Pennsylvania from the judgment of sentence imposed on January 27,

2015. This Opinion is written pursuant to Rule 1925(a) of Pennsylvania Rules of

Appellate Procedure, and for the following reasons, this Court requests that this appeal

be denied.

## I.   Background

On June 7, 2013, Noviho was charged with two counts of homicide by vehicle,[1]

aggravated assault by a vehicle,[2] and related summary offenses as a result of conduct

arising out of an incident on November 11, 2012. It was alleged that Noviho

unintentionally caused the deaths of two people and the serious bodily injury of another

as a result of his operation of a tractor while violating the Motor Vehicle Code in a

---

[1] 75 Pa. C.S.A. § 3732(A).

[2] 75 Pa. C.S.A. § 3732.1(A).

reckless or grossly negligent manner. Katie West was the operator of the other involved vehicle and she suffered serious bodily injury. Joshua A. West, her husband, was the front seat passenger and he was deceased as a result of the crash. Joshua C. West, her three-year-old son, who was in a child safety seat in the right rear passenger seat, also died from injuries sustained in the crash. Mrs. West's five-year-old daughter was in a booster seat in the left rear passenger seat and she suffered only minor injuries.

Following a six-day trial, the jury found Noviho not guilty of the homicide by vehicle and aggravated assault by vehicle charges. Following the jury's rendering of its verdict, this Court, sitting in judgment on the remaining summary charges, convicted Noviho of the Motor Vehicle Code violations of driving too slow for conditions, failure to use flashing signals, and moving a vehicle unsafely.[3][4] (N.T. at 1093-94.) Noviho was immediately sentenced to pay the statutory fines of $25.00 for each offense, plus costs.[5] (Id. at 1094.)

A timely notice of appeal to the Superior Court of Pennsylvania was filed on February 26, 2015. Pursuant to this Court's directive, Noviho furnished a concise statement of matters complained of on appeal which raises the following issues on

---

[3]75 Pa. C.S.A. § 3364(a), 75 Pa. C.S.A. § 4305(a), (b)(1), and 75 Pa. C.S.A. § 3333, respectively.

[4]Noviho was found not guilty of failure to use required lighted lamps, 75 Pa. C.S.A. § 4305(c), and the additional count of slow moving vehicle was withdrawn by the Commonwealth as duplicative. (Notes of Trial Testimony (N.T.) at 1093.)

[5]Section 6502 of the Motor Vehicle Code provides, in relevant part, that "[e]very person convicted of a summary offense for a violation of any of the provisions of this title for which another penalty is not provided shall be sentenced to pay a fine of $25." 75 Pa. C.S.A. § 6502(a).

2

appeal: (1) the Court erred in granting the Commonwealth's motion in limine; (2) the Court erred in excluding from evidence photographs taken at the scene of the accident; (3) the verdict on Count 5 (too slow for conditions) was against the weight/sufficiency of the evidence; (4) the verdict on Count 7 (use of flashing signals) was against the weight/sufficiency of the evidence; (5) the verdict on Count 8 (moving vehicle safely) was against the weight/sufficiency of the evidence; and (6) the Court erred in failing to allow the jury to indicate on the verdict slip which, if any, specific violation(s) of the Motor Vehicle Code occurred. (*See* Concise Statement at ¶¶ 1-6.) I will address these issues in reverse order.

## II.   Discussion

### A.   Jury Interrogatories

Noviho claims this Court erred by failing to have special interrogatories for the jury to determine whether the specific Motor Vehicle Code violations which were essential elements of the charged felony offenses were proven. (*See* Concise Statement at ¶ 6.)

> A trial court possesses broad discretion in phrasing its instructions to the jury and will not be found to have abused its discretion unless the instructions fail to clearly, adequately, and accurately present the law. . . . Proper appellate review dictates th[e] [Superior] Court consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. . . . Moreover, an appellant's belief that a court's instructions should contain additional explanation or his chosen dicta will not render a jury charge defective.

Commonwealth v. Hunzer, 868 A.2d 498, 516 (Pa. Super. 2005) (internal quotations

3

and citations omitted). In **Hunzer**, the Superior Court found that where the trial court utilized the standard jury instruction for the offense charged (rape) and properly instructed on the elements required for that offense, the defendant's request for a special interrogatory as to a particular element of the offense (penetration) was properly denied.

Similarly, in the instant case, I used the standard jury instructions for the two felony offenses charged (homicide by vehicle and aggravated assault by vehicle), and instructed the jury as to the elements required to be proven beyond a reasonable doubt for each. (N.T. at 1028-40.) One common element for each felony was that Noviho committed a violation of the Motor Vehicle Code. (Id. at 1029, 1037.) The six underlying traffic regulations alleged to have been violated by Noviho were set forth at length during the charge (Id. at 1031-35), and repeated in response to questions by the jury during their deliberations. (Id. at 1052-56, 1081-82.) I concluded my initial instructions by noting: "You may find all, you may find none, but in order to find the defendant guilty, you must find beyond a reasonable doubt that he has been proven guilty of violating *at least one* of the Motor Vehicle Code motor vehicle regulations." (Id. at 1039-40 (emphasis added).)

As the jurors were clearly, adequately and accurately instructed on the elements for each charged offense, there was no trial court error in refusing to have special interrogatories for the jury to determine those elements. *See* **Hunzer**, *supra*. This allegation of error should be rejected.

4

Moreover, to allow the jury to specifically rule on the underlying motor vehicle violations would have been improper as no right to a jury trial historically or constitutionally is afforded an accused for a summary offense. The United States and Pennsylvania Constitutions require that only "one accused of a 'serious offense' be given a jury trial." **Commonwealth v. Mayberry**, 459 Pa. 91, 97, 327 A.2d 86, 89 (1974). "The question becomes whether the crime charged . . . is 'serious'. The test is clear. The decisions of the Supreme Court of the United States 'have established a fixed dividing line between petty and serious offenses: those crimes carrying more than six months sentence are serious and those carrying less are petty crimes.'"[6] Id. at 98, 327 A.2d at 89.

The Motor Vehicle Code violations at issue in this case do not provide for a sentence of imprisonment. Noviho was subject only to a fine for his summary offenses. Therefore, the right to trial by jury was not implicated, and he was not entitled to a trial by jury on the summary offenses. See **Commonwealth v. Kincade**, 358 Pa. Super. 591, 597, 518 A.2d 297, 300 (1986). See also **Commonwealth v. Smith**, 868 A.2d 1253, 1257 (Pa. Super. 2005). This Court was right to take the summary motor vehicle violations from the jury's consideration in this case.

Noviho further charges that the Court "abused its discretion in consulting with jurors prior to [the] Court's declaration of verdict regarding the Summary Offenses."

---

[6]Under the definition in the Crimes Code, a "summary offense" is an offense "so designated in this title, or in a statute other than this title; or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than 90 days." **Commonwealth v. Johnson**, 878 A.2d 973, 977 (Pa. Cmwlth. 2005) (quoting 18 Pa.C.S.A. § 106(c)).

(See Concise Statement at ¶ 6.) Following the jury's verdict in this case, the

Commonwealth presented the summary offenses for a determination by the Court.

(N.T. at 1090.) After hearing argument from counsel regarding the propriety of ruling on

those summary charges (Id. at 1090-91), I called a recess to allow counsel to prepare

their summations and to allow me to address the jurors in Chambers.[7] (Id. at 1091-92.)

No objection was made by defense counsel at that time to my meeting with the jurors

and thanking them for their service. (Id. at 1092.) Nor was a motion for mistrial made

before a verdict on the summary charges was directed after I re-entered the courtroom.

(Id. at 1093.) Failure of Noviho to object at trial to this alleged procedural impropriety at

trial waived that objection on appeal. See **Commonwealth v. Romesburg**, 353 Pa.

Super. 215, 223, 509 A.2d 413, 417 (1986), and cases cited therein.

.B.    **Weight/Sufficiency of the Evidence**

Noviho has raised the issue of whether the evidence was sufficient to support his

summary convictions, given that the jury did not find the violations sufficient to convict

on the felony charges. (See Statement of Errors at ¶¶ 3-5; see also N.T. at 1090,

1094.) Noviho also argued at trial that the Court's verdict of guilty on the summary

motor vehicle charges is inconsistent with the jury's verdict of not guilty on the other

felony offenses that stemmed from the same alleged course of conduct. (See N.T. at

1094-96.)

---

[7]There is nothing that prevents a trial judge from meeting with the jurors to thank them
for their service following their discharge from the case. My meeting with the jurors, outside of
Noviho's presence, occurred after the jury had delivered its unanimous verdict, and after the
verdict was recorded by the clerk. (N.T. at 1088-90.)

6

Our appellate courts have recognized that a criminal defendant who has been charged with both a summary offense and a felony offense may be placed in the unusual situation of having a trial before two separate and distinct fact finders -- a jury on the felony charge and a trial judge on the summary charge. *See, e.g.,* Commonwealth v. Barger, 956 A.2d 458, 459 (Pa. Super. 2008) (rape (F) and harassment (S)); Commonwealth v. Wharton, 406 Pa. Super. 431-32, 436, 594 A.2d 696, 697 (1991) (involuntary manslaughter (F) and driving at unsafe speed (S)); Commonwealth v. Bowman, 400 Pa. Super. 525, 526, 583 A.2d 1239, 1240 (1990) (accidents involving death or personal injury (F) and driving under suspension (S)). *See also* Commonwealth v. Costa-Hernandez, 802 A.2d 671 (Pa. Super. 2002) (DUI (M) and driving under suspension (S)); Commonwealth v. Long, 753 A.2d 272 (Pa. Super. 2000) (same); Commonwealth v. Yachymiak, 351 Pa. Super. 361, 505 A.2d 1024 (1986) (same). Such a consolidated jury/bench trial gives rise to the possibility of inconsistent factual findings. Barger, *supra* at 460. However, even if the judge's findings of fact, which support a conviction on the summary violation, do not comport with the jury's findings, which result in an acquittal of the felony charge, the judge's findings will not be disturbed on appeal, as the judge is under no duty to defer to the jury's findings on common factual issues. Yachymiak, *supra* at 366-67, 505 A.2d at 1026-27. *See also* Wharton, *supra* at 437, 594 A.2d at 699. Thus, inconsistent verdicts are permissible in Pennsylvania. Barger, *supra* at 460-61.

As I explained at trial, however, the two verdicts in this case are not necessarily inconsistent. A conviction for homicide by vehicle would have necessitated three

7

findings of fact: (1) Noviho caused the death of Joshua Alan West and/or Joshua

Charles West (2) by acting recklessly or with gross negligence, (3) while violating a

Motor Vehicle Code regulation. See 75 Pa. C.S.A. § 3732(a). My findings that Noviho

violated three provisions of the Motor Vehicle Code are inconsistent only if the acquittal

was based on the jury's doubt that Noviho operated his vehicle in violation of a driving

regulation rather than on the absence of the other two elements of the offense. As I

noted to counsel:

> [T]he jury . . . asked a number of questions with regard to the
> second element, that the defendant acted recklessly or with gross
> negligence.[8]  They asked a number of questions, and they could
> very well have found a violation of the Vehicle Code and then found,
> however, that the conduct of the defendant was merely negligent or
> something else and not grossly negligent or reckless, as required
> by homicide by vehicle.

(See N.T. at 1096.) The jury in this case apparently struggled with the question of

whether Noviho's conduct was reckless or grossly negligent. The verdicts in this case

were not necessarily inconsistent. The "[Superior] Court will not disturb guilty verdicts

on the basis of apparent inconsistencies as long as there is evidence to support the

verdict." **Commonwealth v. Swann,** 431 Pa. Super. 125, 128, 635 A.2d 1103, 1104-

05 (1994). Therefore, I will address the sufficiency of the evidence as to each summary

offense.

---

[8]The jury, in fact, asked that the second element of homicide by vehicle regarding recklessness or gross negligence be reread four times during their deliberations. (See N.T. at 1057, 1060, 1081, 1085.)

8

1.    Count 5 – Too Slow for Conditions, 75 Pa. C.S.A. § 3364(a)

Noviho was first found guilty of the summary offense of driving too slow

for conditions. Section 3364 of the Motor Vehicle Code provides in relevant part:

(a) Impeding movement of traffic prohibited. – Except when
reduced speed is necessary for safe operation or in compliance with
law, no person shall drive a motor vehicle at such a slow speed as to
impede the normal and reasonable movement of traffic.

75 Pa. C.S.A. § 3364(a). To establish a violation of § 3364, the Commonwealth does

not have to prove the speed at which the defendant was driving. **Commonwealth v.**

**Robbins**, 441 Pa. Super. 437, 657 A.2d 1003 (1995). However, an element of the

offense is proof that the defendant's slow driving speed impeded the flow of traffic. Id.

Noviho claims the Commonwealth failed to establish that his "'slow speed was

not necessary for safe operation' where there was no testimony presented as to the

reasons for [Noviho's] speed or that the 'reasonable movement' of traffic was impeded."

(See Statement of Errors at ¶ 3.) This argument must be rejected as the evidence

clearly and unequivocally established both the reason for Noviho's slow speed and its

impact on traffic.

It is undisputed that the applicable speed limit on the relevant stretch of Route

222 is 65 mph. (See N.T. at 589.) The Commonwealth's accident reconstruction

expert, Officer Bryan Kondras, conclusively determined that Noviho was operating his

tractor at 17 mph at the time of impact with the West vehicle. (Id. at 618, 620.) Noviho

initially reported to the police that he was driving between 50 and 55 mph in a known 65

mph zone. (Id. at 729, 745; see also Commonwealth Exhibits 21 & 22.) The expert

9

evidence would later establish that, in fact, Noviho had been traveling at speeds of 55 mph 1 minute and 44 seconds *prior* to the collision. (Id. at 615.) However, Noviho then brought his tractor to a stop, either on the roadway or on the shoulder of the road,[9] for 26 seconds. (Id. at 616-17.) Noviho re-entered the highway or resumed his travel just 16 seconds prior to the crash. (Id. at 618-19; *see also* Commonwealth Exhibit 19.) During that short time, Noviho only accelerated his tractor over 197 feet to a maximum speed of 17 mph at the time of impact. (Id. at 617-18, 621-22; *see also* Commonwealth Exhibit 19.) The Commonwealth's expert testified that, from the forensic evidence, Noviho was "not in a hurry to get up to speed." (Id. at 624.) The expert was also able to determine that there were no mechanical defects or malfunctions in the tractor, no roadway defects and no adverse weather conditions that might have contributed to the slow speed of the tractor and the ultimate crash. (Id. at 638.)

From this evidence, the reason for Noviho's slow speed was sufficiently established. Noviho pulled into traffic on a 65 mph highway from a dead stop and did not accelerate sufficiently to avoid impact with another vehicle on the roadway who was traveling with the normal flow of traffic.[10] (Id. at 626-27.) The slow speed was clearly not "necessary for safe operation or in compliance with law." *See* 75 Pa. C.S.A.

___

[9]The Commonwealth expert testified only that the tractor was stopped either on the northbound roadway or on the shoulder of Route 222 197 feet before the Landis Valley Road overpass where the impact occurred. (N.T. at 617, 618, 621.) The forensic data and reconstruction analysis could not definitively place the stopped tractor either in the lane of travel or outside the lane of travel. (Id. at 625.) There is an improved shoulder in that location but no designated parking area or rest area. (Id. at 616-17.)

[10]Both James Schlinkman and Michele Levisky testified that they were driving at approximately 70 mph in the 65 mph zone. (N.T. at 247, 382.) According to these eyewitnesses, the West vehicle was traveling between 65 and 70 mph. (Id.) Thus, the West vehicle was traveling with the normal flow of traffic at the time of impact.

10

§ 3364(a). To the contrary, the Commonwealth expert testified that safety required Noviho to drive his tractor on the improved shoulder for a sufficient distance until he was operating at a safer speed to enter the highway and merge into traffic.[11] (Id. at 627.)

In order to constitute a violation of § 3364(a) of the Motor Vehicle Code, the Commonwealth had to further establish that Noviho's slow speed "impede[d] the normal and reasonable movement of traffic" on Route 222. See 75 Pa. C.S.A. § 3364(a). As for the "movement of traffic," there was abundant testimony to the presence of other vehicles on the roadway while Noviho was driving at the prohibited slow rate of speed. Noviho himself reported to the police that the traffic volume on Route 222 at the time of the collision was "normal," thus, indicating the presence of other vehicles on the roadway with him. (N.T. at 730.) Moreover, there was testimony at trial from two eyewitnesses to the collision who were traveling beside and behind the West vehicle at the time of impact.[12] (See Id. at 245-50; 382-91.) Clearly, there was sufficient evidence to establish the presence of traffic on Route 222 to impede.[13]

---

[11]The improved berm continued from where Noviho was first stopped, 197 feet south of the Landis Valley Road overpass, to beyond the point where the tractor came to stop after the collision. (N.T. at 598.)

[12]James Schlinkman testified that the traffic conditions on Route 222 were "[l]ight to moderate. Not real heavy." (N.T. at 380.) Michele Levisky also testified that there were vehicles ahead of her as she was driving in the left lane of Route 222 just prior to the collision. (Id. at 248-49.)

[13]The majority of the decisions in the Pennsylvania Common Pleas Courts hold that when determining whether slow speed is a violation (or may serve as reasonable articulable suspicion for a stop) there must be some testimony as to the presence of other vehicles on the roadway besides the defendant's vehicle and perhaps the police officer's vehicle. See Commonwealth v. McGrath, 78 Bucks Co. L. Rep. 212 (2004) (traffic stop not lawful where officer testified that there was no other traffic on roadway during his interaction with defendant,

11

The question for the Court then was when does a slow-moving vehicle "impede" the normal movement of traffic. This Court has found only two published Pennsylvania appellate court decisions interpreting this statute. In **Commonwealth v. Robbins**, 441 Pa. Super. 437, 657 A.2d 1003 (1995), the Superior Court affirmed the defendant's conviction of impeding the "normal and reasonable movement of traffic" where he was driving between 18 and 28 mph below the posted maximum speed limit in a no-passing zone and causing a large number of vehicles to be backed up behind him. The Court explained:

> All that needed to be shown was that [Robbins] was operating his vehicle at such a slow speed that it was an impediment to the normal and reasonable movement of traffic. The testimony of the two officers indicated that [Robbins] was driving very slowly at a rate of speed of about 17 miles per hour through no-passing zones with speed limits of 35 and 45 miles per hour. *The officers also mentioned that between 18 or 20 cars were trailing behind [Robbins] and the operators of those vehicles were angry, raising their fists and honking their horns at [Robbins].*

Id. at 440, 657 A.2d at 1004 (emphasis added). This decision suggests that the driver of a slow-moving vehicle impedes traffic when his or her reduced speed interrupts the "normal and reasonable movement of traffic" by blocking or backing up traffic.

---

so slow rate of speed could not have impeded the normal movement of traffic); **Commonwealth v. Haugh**, No. C.A. 03-440, *slip op.* (Butler Co., June 17, 2003) (no reasonable suspicion of a violation of § 3364 where police officer testified there was no other traffic on the road during the four miles that he followed defendant driving at a slow speed); **Commonwealth v. Memminger**, No. 1481 Criminal 1999, *slip op.* (Monroe Co., Feb. 23, 2000) (no reasonable suspicion of a violation of § 3364 where the only traffic on highway at the time of the stop for slow speed was defendant's car and the police car that had been following him for five miles); *cf.* **Commonwealth v. Faustner**, No. 1742 of 2005, *slip op.* (Lehigh Co., Dec. 28, 2005) (summary vehicle code stop for "impeding traffic" lawful where no "civilian traffic" on roadway at the time, but only police officer's vehicle).

12

Other jurisdictions that have considered impeding traffic statutes, which are nearly identical to Pennsylvania's statute, have also focused on whether a driver's slow speed blocked or otherwise backed-up traffic. *See, e.g.*, **State v. Pray**, 5 Kan. App.2d 173, 613 P.2d 400 (1980) (holding that driving farm combine 12-15 mph on a state highway with a 13-vehicle back-up provided sufficient evidence to find the driver guilty of impeding the normal and reasonable movement of traffic); **State v. Lewis**, 980 So.2d 251 (La. App. 3rd Cir. 2008) (holding valid traffic stop where the speed limit was 70 mph and there were 8 cars waiting in the passing lane for a vehicle traveling less than the speed limit to move over so that they could pass by, thus impeding the normal flow of traffic); **State v. Haataja**, 611 N.W.2d 353 (Minn. Ct. App. 2000) (holding that an officer had reasonable suspicion to initiate a stop of a car where the driver was traveling 10-15 mph slower than the posted maximum speed limit and other cars were backed-up behind defendant); **State v. Benders**, 334 Mont. 231, 146 P.3d 751 (2006) (holding that driving approximately 30-45 mph under the posted maximum speed limit and a build-up of at least 4 vehicles gave officer "sufficient information, under the totality of the circumstances, to establish particularized suspicion that [defendant] was violating the law against impeding traffic"); **Moreno v. State**, 124 S.W.3d 339 (Tex.App. 2003) (holding that driving 25 mph in 45 mph zone provided officer with probable cause to stop vehicle for impeding traffic where officer also observed traffic backed up behind defendant's vehicle due to slow driving). Clearly, a driver can "impede" or interrupt the normal and reasonable movement of traffic if he or she causes other vehicles to come to a stop or a crawl.

13

Employing similar reasoning, our Superior Court concluded, in the second published appellate court decision interpreting § 3364(a), that when a driver's slow speed does not affect other motorists then the driver is not impeding the normal and reasonable movement of traffic. In **Commonwealth v. Lana**, 832 A.2d 527 (Pa. Super. 2003), the Superior Court found a traffic stop based on § 3364 to be without probable cause where a police officer stopped a motorist with out-of-state tags driving 5 to 10 mph in a 20 mph zone at 4:00 a.m. on a residential street in a high-crime area of Philadelphia. Citing to the record, the Court summarily concluded that "[n]o traffic was impeded by the speed of appellant's vehicle." Id. at 529. The Court further noted that the officer followed the slow-moving motorist "for a distance of just one block, barely enough time in which to fasten one's seat belt and adjust the mirrors." Id. As there was no evidence of the slow driving affecting other traffic, the Court held the officer lacked probable cause to execute a traffic stop of the defendant. Id. at 529-30. See also **Commonwealth v. Henderson**, 87 Bucks Co. L. Rep. 478 (2014) (stop unlawful where officer testified other traffic on roadway minimal and not impacted or affected in any way by defendant's sudden and rapid deceleration to an almost full stop in the middle lane of a three-lane highway); **Commonwealth v. Puskar**, No. 1859 of 2005, slip op. (Fayette Co. May 18, 2006) (where officer testified there was other traffic on the road but he had no recollection as to whether any vehicles were following behind defendant, court concluded officer had no knowledge that slow speed was impeding 'the normal and reasonable movement of traffic").

Other states have similarly decided that when a driver's slow speed does not have an effect upon other motorists on the roadway then the driver is not impeding the

14

flow of traffic. *See, e.g.,* **Agreda v. State**, 152 So.3d 114 (Fla. Dist. Ct. App. 2014) (concluding that detective lacked legal basis for traffic stop for driving at such a slow speed as to impede the normal flow of traffic, even if five other vehicles were following behind the vehicle, where highway had two lanes in each direction, traffic was otherwise light, detective had no trouble passing all the vehicles to reach the lead vehicle, and vehicle's speed of 45 mph was within the permissible range for the highway); **People v. Beeney**, 181 Misc.2d 201, 694 N.Y.S.2d 583, 586 (N.Y. Co. Ct. 1999) (noting that "the dispositive factor when determining whether slow speed is a violation (or may serve as reasonable articulable suspicion for a stop) is its effect upon other drivers"); **State v. Bacher**, 170 Ohio App. 3d 457, 867 N.E.2d 864 (2007) (concluding that officer lacked reasonable suspicion to initiate a stop of defendant's vehicle for impeding or blocking traffic when there was no evidence in the record that defendant's slow speed affected other drivers); **State v. Tiffin**, 202 Or.App. 199, 121 P.3d 9 (2005) (where the speed was not significantly below the speed limit, there were no other cars on the road, and, if the officers' vehicle was blocked at all, it was for a very short distance, it cannot be said that defendant was blocking or impeding the normal and reasonable flow of traffic).

Clearly, the duty imposed by § 3364(a), and other statutes around the country like it, that proscribes against the slow speed of traffic upon state highways is for the purpose of protecting against the risk that a slow-moving vehicle would block traffic or create a dangerous condition on a highway designed and customarily used to carry fast-moving traffic. This is precisely what happened in the instant case. The Commonwealth established (1) Noviho's operation of a motor vehicle below the posted

15

speed limit, (2) which operation, impeded the "normal and reasonable movement of traffic."

Here, Noviho was driving on a controlled access, two-lane, one-way portion of the highway. He knew or should have known that other vehicles were likely to be driving at speeds within the maximum permitted by statute – 65 mph. He was at a place where there was, insofar as the road was concerned, no apparent reason for curtailment of speed (such as warnings, obstructions, entrances, exits, etc.) or other existing condition which would cause a following motorist to anticipate that a driver in front would be driving at, or would slacken to, an unusually slow speed. Coupled with this is the important circumstance that Noviho had been driving at 55 mph. Within a two minute period, he brought his truck from 55 mph to a dead stop and then started his movement again, all the while without giving any warning, by use of his hazard lights, of his stopping or starting. He knew or should have known, by simply looking, that there were motorists behind him.[14] This conduct was voluntary on his part and was not necessary for safe operation or to comply with any law.

Under the circumstances of this case, there existed a substantially dangerous condition as created by Noviho's below speed limit driving that not just impeded traffic, but, as required by law, impeded the normal and reasonable movement of traffic and resulted in a fatal collision.[15] We, therefore, could conclusively determine from the facts

---

[14]Both eyewitnesses to the collision testified that the headlights on the West vehicle were on and illuminated the tractor at the time of impact. (N.T. at 245, 248, 251, 383, 385.)

[15]Moreover, the West vehicle could not safely pass the slow-moving tractor in the right lane as testimony established a passing car in the left lane in the moments prior to impact. (N.T. at 245, 247-48.)

16

as presented by the Commonwealth that Noviho was in violation of § 3364 of the Motor

Vehicle Code.

2. **Count 7 – Vehicular Hazard Signal Lamps, 75 Pa. C.S.A. § 4305**

Noviho was also convicted at Count 7 of driving without the required

vehicular hazard signal lamps. Section 4305 of the Motor Vehicle Code provides, in

relevant part, as follows:

> (a) **General rule.–** Simultaneous flashing of the two front and two
> rear signal lamps shall indicate a vehicular traffic hazard. The driver
> of a motor vehicle equipped with simultaneous flashing signals shall
> · use the signals when the vehicle is stopped or disabled on a highway,
> except when the vehicle is stopped in compliance with a traffic-control
> device or when legally parked. . . .
>
> (b) **Use outside business and residence districts.–** Outside of a
> business or residence district:
> (1) The driver of a motor vehicle or combination equipped with
> simultaneous flashing signals shall use the signals when the vehicle is
> unable to maintain a speed of at least 25 miles per hour because of
> weather, grade or other similar factors or is unable to maintain a speed
> consistent with the normal flow of traffic.
>
> . . .
>
> (c) **Use below minimum speed limit.–** The driver of a motor vehicle
> or combination equipped with simultaneous flashing signals shall use
> the signals when the vehicle is not maintaining at least the minimum
> speed established in accordance with the provisions of section 3364
> (relating to minimum speed regulation). ·

75 Pa. C.S.A. § 4305(a)-(c).

Noviho was originally charged at Count 7 with violating subsection (c) above and,

accordingly, Count 7 is identified on the Information as "Use Below Minimum Speed

Limit." However, during the trial in this matter, on oral motion of the Commonwealth's

. 17

attorney and without objection from defense counsel, the Information was amended at Count 7 to delete subsection (c) and to add subsections (a) and (b)(1). (N.T. at 62; see also N.T. at 74.) I made a notation on the Information to reflect these changes regarding the applicable subsections but I did not change the caption for Count 7 which read: "Use Below Minimum Speed Limit." This explains why, when I pronounced the verdict on Count 7, I referred to "use below minimum speed limit." (Id. at 1094.) In fact, Noviho was found guilty of violating subsections (a), "General Rule," and (b)(1), "Use outside business and residence districts."

Under the Pennsylvania Motor Vehicle Code, the use of hazard lights to warn of a traffic hazard is mandatory. Pursuant to § 4305(a), "[t]he driver of a motor vehicle equipped with simultaneous flashing signals *shall* use the signals when the vehicle is stopped or disabled on a highway, except when the vehicle is stopped in compliance with a traffic-control device or when legally parked." 75 Pa. C.S.A. § 4305(a) (emphasis added). The Commonwealth, therefore, was required to establish the following three facts: (1) Noviho's tractor was stopped, (2) on a highway, (3) without his flashing signals activated.

Route 222 constitutes a "highway" under § 4305 because the street is publicly maintained and open to the public for vehicular traffic.[16] Moreover, the tractor met the definition of "stopped" under § 4305. "Stopped" includes "any halting even

---

[16]Section 102 of the Vehicle Code defines highways as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. . . ." 75 Pa. C.S.A. § 102. Thus, whether Noviho was on the traveled portion of the roadway or on the berm or shoulder, he was nonetheless on the highway.

18

momentarily." 75 Pa. C.S.A. § 102.[17] The use of the word "any" accounts for all stops regardless of the duration. Noviho's tractor was "stopped," for purposes of § 4305(a), on Route 222 for 26 seconds. (N.T. at 616.) The statute does provide for exceptions such as stopping to "avoid conflict with other traffic" or to comply "with the directions of a police officer or traffic-control sign or signal." 75 Pa. C.S.A. § 102. However, there was no evidence presented to suggest that Noviho stopped his tractor on the highway to avoid conflict with other traffic. Nor was there evidence to indicate that Noviho was merely abiding by traffic signs, signals, or officer directions.

Lastly, there was sufficient evidence to find that, when Noviho's tractor was stopped on the highway for 26 seconds, he did not utilize his flashing signals. Both eyewitnesses to the collision testified that they never saw a vehicle pulled off to the side of the roadway ahead of them with *any* lights on. (N.T. at 261, 383-84.) It was the consistent testimony of both drivers that the object which the West vehicle struck came out of the darkness. (Id. at 245-46, 249-51, 260, 383.)

Based upon all of the evidence provided at trial, Noviho was properly found guilty of the summary offense of being "stopped" on a "highway" without using his flashing signals to warn other drivers of a traffic hazard.[18] 75 Pa. C.S.A. § 4305(a).

---

[17]Section 102 of the Vehicle Code defines "stopped" as "any halting even momentarily of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal." 75 Pa. C.S.A. § 102.

[18]The evidence would also have supported a violation of subsection (a) for failure of Noviho to use his flashing signals to warn of a traffic hazard *after* the collision when he was stopped on the shoulder of Route 222 while rescue efforts were being conducted on the occupants of the West vehicle. (*See* N.T. at 206, 232-33, 253, 255, 392, 604; *see also* Commonwealth Exhibit 7.) The testimony of four eyewitnesses that Noviho failed to activate his flashers on the tractor is in stark contrast to Noviho's two statements to the police the night of

19

Noviho was also charged with the related vehicular hazard signals offense found in § 4305(b)(1). Pursuant to that subsection, when outside business and residential areas,[19] "[t]he driver of a motor vehicle or combination equipped with simultaneous flashing signals shall use the signals when the vehicle is unable to maintain a speed of at least 25 miles per hour because of weather, grade or other similar factors or is unable to maintain a speed consistent with the normal flow of traffic." 75 Pa. C.S.A. § 4305(b)(1). Noviho claims the evidence at trial failed to establish that he was "unable" to maintain a speed consistent with the normal flow of traffic where there was no testimony presented as to whether his vehicle was unable to "maintain speed." (See Statement of Errors at ¶ 4.)

The assumption by the Court is that Noviho is suggesting he was accelerating at the time of impact with the West vehicle and had not reached his maintainable speed. The statute requires the use of hazards when a vehicle is "unable to maintain a speed consistent with the normal flow of traffic." 75 Pa. C.S.A. § 4305(b)(1). Whether accelerating or not,[20] Noviho was driving in a designated lane of travel on a high-speed

---

the accident that he activated his "emergency lights" or "four-way flashers" after he "felt an impact from behind." (Id. at 729, 744, 745.)

[19] The testimony conclusively established that this section of Route 222 was outside business and residential areas, ran through a rural stretch of countryside, and was very dark. (N.T. at 116-17, 159, 210, 243-44, 381, 589-90.)

[20] What distinguishes this case is the fact that Noviho was not entering the highway from an entrance ramp which allows a vehicle to accelerate to the appropriate speed to merge into oncoming traffic. Such an approach lane also alerts highway traffic to the possibility of other vehicles entering the roadway at a reduced speed, although the vehicle entering the highway must always yield to oncoming traffic. See 75 Pa. C.S.A.§ 3321. In this case, Noviho stopped his vehicle on the highway and was attempting to re-enter the flow of traffic. He failed to use the improved shoulder as an acceleration ramp to achieve even a moderately safe speed before entering the highway and merging into traffic. (See N.T. at 627.)

20

road at a substantially subnormal speed that was clearly not consistent with the normal flow of traffic which was traveling at speeds of approximately 65 to 70 mph. (See N.T. at 247, 382.) Because Noviho could not maintain a speed consistent with the traffic flow on Route 222, he was required by law to activate his hazard lights to alert drivers to a dangerous condition on the highway.

Again, the testimony of the two eyewitnesses to the collision established the absence of Noviho's hazard lights. James Schlinkman testified that immediately prior to impact, he saw neither hazard lights, running lights, nor tail lights on the tractor. (N.T. at 383-84.) Similarly, Michele Levisky stated she saw no flashing hazards, no headlights, and no steady tail lights. (Id. at 251, 255.) This evidence conclusively established that Noviho failed to use his flashing signals when he was driving on Route 222 at a speed significantly less than the normal flow of traffic for a 65 mph zone.

### 3. Count 8 – Move Vehicle Unsafely, 75 Pa. C.S.A. § 3333

Lastly, Noviho challenges this Court's verdict on the summary charge of failing to move his vehicle safely from a stopped position on the roadway. Section 3333 of the Motor Vehicle Code provides: "No person shall move a vehicle which is stopped, standing or parked unless and until the movement can be made with safety." 75 Pa. C.S.A. § 3333. Noviho charges that the Commonwealth failed to establish beyond a reasonable doubt "that the movement of [his] vehicle onto the roadway was unsafe where there was no testimony as to *when* the vehicle entered the roadway." (See Statement of Errors at ¶ 5 (emphasis added).)

21

.To the contrary, there was exhaustive expert testimony from which the finder of fact could determine when Noviho entered the roadway. The electronic control module (ECM) from the tractor provided detailed data for the two-minute period of time surrounding the collision. (N.T. at 610-11.) At precisely 17-seconds before impact with the West vehicle, Noviho's tractor was in a stopped or idling position, with the brakes and clutch engaged. (Id. at 617, 625.) At precisely 16 seconds before impact with the West vehicle, Noviho's tractor started moving. (Id. at 618-19; see also Commonwealth Exhibit 19.) The data shows that the tractor traveled 197 feet over the course of 16 seconds at a top speed of 17 mph before the collision occurred. (Id. at 617-21.)

The Commonwealth's expert, Officer Kondras, presented the three possible scenarios for how and when Noviho entered the highway from his assumed position on the berm[21]; none of which was, in his opinion, safe given the speed of oncoming vehicles. (N.T. at 627.)

> [Noviho] either pulls out and immediately cuts over into the lane and is going 2 miles, 3 miles an hour[.] [O]r he slowly pulls out and does a . . . very slow, steady movement over. And then if he's halfway through it, he's going 8, 11 miles an hour.
> Or he drives up the shoulder . . . and at the last second before impact he cuts over and immediately into the right lane. He's going 15 to 17 miles an hour at that point and . . . he essentially would have cut right in front of Ms. West's vehicle as he gets over.

(Id. at 628-29.) Based upon this information, Officer Kondras opined that "clearly it was unsafe to pull out. There's no safe time." (Id. at 628.)

---

[21]As noted previously, the ECM established that the tractor was stopped but it could not verify whether it was on or off the highway. (N.T. at 615-17, 621, 626.) The logical assumption is that the tractor was pulled off onto the shoulder of the roadway. The alternative, stopping a vehicle in a lane of travel on a 65 mph highway at night, is almost too ludicrous even to suggest.

22

This electronic data was confirmed by the eyewitness testimony of Schlinkman who stated that the time and distance that elapsed from Ms. West's headlights illuminating the tractor and the collision was "[n]o more than a second" (N.T. at 387), "instantaneous" (Id. at 388-89), "maybe a car length and a half." (Id. at 390.) The other witness, Levisky, testified that she heard the crash *first* and then "saw the headlights hit whatever was in front of it." (Id. at 245; *see also* Id. at 249.) She could not even identify the object as another vehicle until after she had brought her car to rest in the grass median. (Id. at 250, 252.)

There was sufficient testimony to support the finding that the tractor was standing either on the highway, or on its berm, at 17 seconds prior to impact, and that sometime during the next 16 seconds, Noviho operated his vehicle from a dead stop onto the 65 mph highway before such movement could be made with safety.

## 4.    Weight of the Evidence

Noviho also claims this Court's guilt determinations were against the weight of the evidence. This issue is waived, however, because Noviho failed to raise it properly at the conclusion of trial or in a post-sentence motion.

The Pennsylvania Rules of Criminal Procedure apply to the summary offenses in this case arising under the Motor Vehicle Code.[22] Accordingly, the Rules governing

---

[22]The case before this Court was a "court case" within the meaning of the Pennsylvania Rules of Criminal Procedure because Noviho was charged with felony offenses and summary offenses. Rule 103 defines the term "court case" as "a case in which one or more of the offenses charged is a misdemeanor, felony, or murder of the first, second, or third degree." Pa.R.Crim.P. 103. By contrast, "summary case" is defined as "a case in which the *only* offense or offenses charged are summary offenses." Id. (Emphasis added). The Comment to

23

post-trial practice are applicable here.[23]  Rule 607 provides, in relevant part, that a claim

that the verdict was against the weight of the evidence "shall be raised with the trial

judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; (3) or in a post-sentence motion."

Pa. R.Crim.P. 607(a).  Noviho did not move for a new trial on weight of the evidence

grounds at the conclusion of trial nor did he file a post-sentence motion raising a weight

of the evidence claim.  As such, this claim is waived.  **Commonwealth v. Walsh**, 36

A.3d 613, 622 (Pa. Super. 2012) (*citing* **Commonwealth v. Priest**, 18 A.3d 1235 (Pa.

Super. 2011) (concluding that appellant's claim that the verdict was against the weight

of the evidence was waived because it was not presented to the trial court in a post-

sentence motion)).  *See also* Pa. R.Crim.P. 607, Comment ("The purpose of this rule is

to make it clear that a challenge to the weight of the evidence must be raised with the

trial judge or it will be waived.")).

Assuming, *arguendo*, that Noviho's weight of the evidence argument has been

preserved for appellate review, it lacks merit.  A claim that the verdict is contrary to the

weight of the evidence "concedes that there is sufficient evidence to sustain the verdict,

---

Pa.R.Crim.P. 400 provides that "[i]f one or more of the offenses charged is a misdemeanor, felony, or murder, the case is a court case (see Rule 103) and proceeds under Chapter 5 of the rules. Ordinarily, any summary offenses in such a case, if known at the time, must be charged in the same complaint as the higher offenses and must be disposed of as part of the court case." Pa. R.Crim.P. 400 Comment (citations omitted). Chapters 5, 6 and 7 of the Criminal Rules govern procedures in court cases and, therefore, govern this case.

[23] I note that Pa.R.Crim.P. 720(D), which prohibits post-sentence motion practice in summary convictions following a trial *de novo*, did not apply because the summary convictions were not from a trial *de novo* after losing before the local district magistrate judge, *see* **Commonwealth v. Dixon**, 66 A.3d 794, 797 (Pa. Super. 2013), and because Rule 400 requires the summary offenses be addressed as court cases. Pa.R.Crim.P. 400, Comment.

but nevertheless contends that the trial judge should find the verdict so shocking to

one's sense of justice and contrary to the evidence as to make the award of a new trial

imperative." **Commonwealth v. Robinson**, 834 A.2d 1160, 1167 (Pa. Super. 2003).

*See also* **Commonwealth v. Lewis**, 911 A.2d 558, 566 (Pa. Super. 2006).

Our Superior Court has explained the proper standard of review applicable to a

challenge to the weight of evidence:

> [T]he weight of the evidence is exclusively for the finder of fact who
> is free to believe all, part, or none of the evidence and to determine
> the credibility of the witnesses. An appellate court cannot substitute
> its judgment for that of the finder of fact. Thus, we may only reverse
> the lower court's verdict if it is so contrary to the evidence as to shock
> one's sense of justice. Moreover, where the trial court has ruled on
> the weight claim below, an appellate court's role is not to consider the
> underlying question of whether the verdict is against the weight of the
> evidence. Rather, appellate review is limited to whether the trial court
> palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Shaffer**, 40 A.3d 1250, 1253 (Pa. Super. 2012) (*quoting*

**Commonwealth v. Champney**, 574 Pa. 435, 444, 832 A.2d 403, 409 (2003)).

Considering the quality and quantity of the evidence in this case, as outlined

above, there is no reason to reject the verdicts. This Court had the opportunity to see

and hear the expert and lay witnesses and evaluated and determined the credibility and

the weight of the evidence in favor of the Commonwealth and against Noviho. The

verdicts in this case certainly do not shock this Court's sense of justice so as to make

the award of a new trial imperative.

25

## C. Motion *in Limine*

Noviho next claims the Court erred in granting the Commonwealth's motion *in limine*,

> including the decision to exclude the testimony of [Noviho's] expert
> witness prepared to testify to the reflective qualities of reflective tape
> placed on the rear of the truck, and an individual's ability to perceive
> and react to an obstacle, and allowing the Commonwealth's witnesses
> to opine as to whether the individual that ran into the back of the truck
> had time to perceive and react to the presence of the truck.

(Statement of Errors at ¶ 1.) This adverse evidentiary ruling by the Court allegedly

violated Noviho's constitutional rights, and "necessarily negates essential elements of

the Summary Offenses of which he was convicted." Id.

Admission of evidence is within the sound discretion of the trial court and will not

be reversed absent an abuse of that discretion. **Commonwealth v. Begley**, 566 Pa.

239, 265, 780 A.2d 605, 620 (2001). An abuse of discretion requires "not merely an

error of judgment, but where the judgment is manifestly unreasonable or where the law

is not applied or where the record shows that the action is a result of partiality,

prejudice, bias or ill will." **Commonwealth v. Charlton**, 902 A.2d 554, 559 (Pa. Super.

2006) (*quoting* **Commonwealth v. Widmer**, 560 Pa. 308, 322, 744 A.2d 745, 753

(2000)).

The admissibility of an expert opinion is governed by Pennsylvania Rule of

Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise
> if:

26

(a) the expert's scientific, technical or other specialized knowledge is beyond that possessed by the average layperson;
(b) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. It has long been the law of this Commonwealth that "[t]he purpose of expert testimony is to assist the factfinder in grasping complex issues not within the knowledge, intelligence, and experience of the ordinary layman." **Commonwealth v. Page**, 59 A.3d 1118, 1135 (Pa. Super. 2013) (*quoting* **Commonwealth v. Begley**, 566 Pa. 239, 263, 780 A.2d 605, 621 (2001)). On the other hand, "[p]henomena and situations which are matters of common knowledge, may not be the subject for expert testimony." **Collins v. Zediker**, 421 Pa. 52, 53, 218 A.2d 776, 777 (1966).

At the start of trial, the Commonwealth presented a motion *in limine* seeking to preclude, *inter alia*, the proffered testimony of defense "human factors" expert, Mark Lee Edwards, Ph.D., that a reasonably alert driver would have been able to detect and respond to the presence of Noviho's tractor based on the conspicuity markings on the rear of the tractor alone. (Commonwealth Motion *in Limine* at ¶ 20.) The Commonwealth argued in its motion that this proffered expert testimony failed to satisfy the test of Pa.R.E. 702 because (1) the jury did not require Dr. Edwards' expertise in understanding this subject matter, and (2) his opinions would invade the province of the jury. (Id. at ¶¶ 21-24.)

Noviho objected to the motion on two grounds. First, he argued that "[h]uman factors experts have long been accepted as appropriate expert witnesses." (Defendant's Response to Commonwealth's Motion *in Limine* at ¶ 21.) In fact, our

27

research uncovered no Pennsylvania cases.allowing human factors testimony in a

criminal case.[24] .Second, Noviho claimed "a lay person would have little or no

knowledge regarding the properties of reflective tape and the ability to perceive." (Id.)

To the contrary, as noted by our sister court in **Morningstar v. Hoban**, 55 Pa. D.&C.4th

225 (Allegh. Co. 2002), when excluding the proffered testimony of a human factors

expert on the ability of a layperson to estimate speeds:

> There are few skills better known to an average person than those
> surrounding driving. This includes estimating the speed of cars all
> around each of us every day. Expert testimony attacking the
> estimates.of speed provided by eyewitnesses such as these with
> ample experience and opportunity for observation is impermissible
> both because the subject is not beyond the knowledge and skill of
> a layperson and because to permit the testimony would intrude
> upon the jury's function of deciding credibility. The proper
> methodology for attacking such testimony is the time tested art of
> cross-examination and not through expert testimony.

Id. at 251.

I would add that also included among the driving skills of a layperson is the

ability to observe and react to reflective markings on other.vehicles. This is something

within the common knowledge and experience of all drivers and does not require expert

testimony to understand. See **Collins v. Zediker**, supra (expert opinion offered as to

speed of a pedestrian's pace was reversible error as matter was within common

---

[24]There are a handful of reported appellate civil cases where human factors experts
were permitted to testify. See Reinoso v. Heritage Warminster SPE LLC, 108 A.3d 80 (Pa.
Super. 2015); Mitchell v. Gravely Int'l, Inc., 698 A.2d 618, 620 (Pa. Super. 1997); Riley v.
Warren Mfg., Inc., 455 Pa. Super. 384, 392, 688 A.2d 221, 225 (1997); Mackowick v.
Westinghouse Electric Corp., 373 Pa. Super. 434, 442, 541 A.2d 749, 752 (1988), aff'd, 525
Pa. 52, 575 A.2d 100 (1990); Smith v. Kelly, 2009 WL 9101529 (Pa. Cmwlth. 2009). See also
Frey v. Harley Davidson Motor Company, Inc., 734 A.2d 1 (Pa. Super. 1999) (expert
testimony on visibility conspicuity permitted).

knowledge and experience of jury); **Christiansen v. Silfies**, 446 Pa. Super. 464, 667 A.2d 396 (1995) (expert testimony concerning weather conditions at time and place of accident properly excluded because weather conditions involve matters of common knowledge that are easily described and understood by laymen, and there was eyewitness testimony regarding the density of fog and level of visibility at accident scene). See also **Commonwealth v. Robertson**, 874 A.2d 1200, 1207 (Pa. Super. 2005) (determining what areas of the body are vital is not a complex issue that would require medical testimony; "an ordinary layman could conclude without expert testimony that [the victim's] head, stomach, and neck are vital areas").

Based upon the case law and the facts of this case, I ruled that Noviho's human factors or conspicuity expert would be permitted to testify only to the existence of the reflective material on the truck and to the placement of the material on the tractor in compliance with the federal laws regarding such. (N.T. at 899-90.) The expert was precluded, however, from testifying as to the distances at which the reflective material could have or should have been visible to the West vehicle. (Id. at 900.) After reviewing the expert report, it was clear that this expert could not offer testimony with regard to the location, condition and/or type of headlights on the West vehicle, or the angle at which they shone on the rear of Noviho's tractor. (Id. at 900-01.) Nor could the expert testify to the specific road and lighting conditions at the time of the collision.

More importantly, there were two lay witnesses in this case, Levisky and Schlinkman, who testified to their ability to perceive the reflective markings on Noviho's tractor, a matter of common knowledge easily described and understood by ordinary

29

citizens. (See N.T. at 245, 249, 250-51, 261, 385.) The availability of firsthand observations from these eyewitnesses who were at the scene made the testimony of a human factors expert unnecessary and, indeed, permitting such testimony would have infringed on the jury's right to determine credibility. See **Commonwealth v. Delbridge,** 771 A.2d 1, 5-6 (Pa. Super. 2001).

Accordingly, following extensive argument by counsel, I ruled, on the record, that the Commonwealth's motion *in limine* to preclude the expert testimony of Dr. Edwards as to a driver's ability to perceive reflective markings on a tractor was granted as this was something every layperson with a driver's license could easily detail and comprehend. (See N.T. at 893-903.) This evidentiary ruling was not an abuse of the Court's discretion and Noviho's challenge to the ruling is without merit.

### D.  Accident Scene Photographs

Lastly, Noviho argues that the Court erred "by excluding from evidence photographs taken at the scene of the accident showing the positioning of the truck at the scene of the accident, emergency triangles placed at the scene of the accident and that the truck in question was visible from a significant distance." (Statement of Errors at ¶ 2.) Again, Noviho claims this adverse evidentiary ruling by the Court violated his constitutional rights, and "necessarily negates essential elements of the Summary Offenses of which he was convicted." Id.

Although Noviho does not specifically identify the challenged photographs for the Court, a review of the record indicates that Defense Exhibits 11, 12 and 13 were

30

objected to by the Commonwealth and not admitted into evidence. (See N.T. at 493-500, 951-52.) I will assume these photographs form the basis of Noviho's evidentiary challenge.

The admission of photographs is largely within the discretion of the trial court and will not be reversed except for an abuse of discretion. **Commonwealth v. Lowry**, 55 A.3d 743, 753 (Pa. Super. 2012) (citing **Commonwealth v. Malloy**, 579 Pa. 425, 856 A.2d 767, 776 (2004)). Here, there was no abuse of discretion in refusing to admit into evidence, for conspicuity purposes, Noviho's photographs of his tractor, where the photographs, although taken on the night of the crash, did not accurately depict the scene of the collision or the conditions at the time of impact. Specifically, (1) the tractor was positioned on the berm as opposed to the right lane of travel, some distance from the point of impact, (2) the tractor was artificially illuminated, and (3) reflective triangles had been placed near the tractor following the crash. (N.T. at 494-99.) See **Commonwealth v. Iafrate**, 385 Pa. Super. 579, 586, 561 A.2d 1244, 1247 (1989), rev'd on other grounds, 527 Pa. 497, 594 A.2d 293 (1991) (no abuse of discretion in court's refusal to admit into evidence photographs purporting to show the placement of vehicles on the street at the time of the incident given the different lighting conditions, the different distances of the car from the curb, and the insufficient foundation laid for the photo depicting the defendant posed by a car); **Yachymiak**, 351 Pa. Super. at 364-65, 505 A.2d at 1025-26 (court did not abuse its discretion in excluding photographs due to its doubt that the lighting, brightness levels, relative heights, depths and distances sufficiently reproduced the observations of the police, thereby failing to establish the probative value of the photographs).

31

Noviho's Exhibits 11, 12 and 13 had limited probative value relative to the conditions at the time of the crash and were also potentially confusing and prejudicial to the jury. Therefore, they were properly excluded in this case.

## III. Conclusion

For the reasons set forth above, this Court respectfully requests that the appeal of Mawuyrayrassuna Emmanuel Yaogan Noviho be denied.

Accordingly, I enter the following:

32

# EXHIBIT "C"

2008 WL 818615
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Claudio JARRETT and Keystone Freight Corp., Plaintiffs,
v.
TOWNSHIP OF **BENSALEM**, et al., Defendants.

Civil Action No. 07-1480.  |  March 26, 2008.

### Attorneys and Law Firms

Joseph M. Toddy, Anton G. Marzano, Zarwin, Baum, Devito, Kaplan, Schaer & Toddy, P.C., Philadelphia, PA, for Plaintiffs.

David J. Macmain, Katherine Skubecz, Montgomery McCracken Walker & Rhoads, LLP, Philadelphia, PA, Joseph J. Santarone, Jr., Marshall Dennehey Warner Coleman & Goggin, King of Prussia, PA, for Defendants.

### *MEMORANDUM AND ORDER*

SCHILLER, District Judge.

**\*1** Plaintiffs Claudio Jarrett and Keystone Freight Corp. ("Keystone") bring this action against Defendants Derek Goldstein and George Price, officers of the **Bensalem** Police Department ("Department"), Fred Harren, Director of Public Safety and Chief of Police for the Township of **Bensalem**, and the Township of **Bensalem**, a municipality. Pursuant to 42 U.S.C. § 1983, Plaintiffs allege that Defendants Goldstein and Price violated their civil rights by filing a police report that falsely blamed Plaintiff Jarrett for an automobile accident that occurred while he was driving a truck for Plaintiff Keystone. Plaintiffs further assert a *Monell* claim against Defendants Harren and **Bensalem**, alleging that they failed to instruct, supervise, control, and/or discipline Defendant Goldstein, thereby ratifying the officer's conduct. Presently before the Court is Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion is granted, and all claims are dismissed.

### I. BACKGROUND

On June 16, 2006, Plaintiff Jarrett was operating a tractor-trailer owned by Plaintiff Keystone, when he collided with a pickup truck being driven by non-party Jared Watson, who was then a volunteer firefighter. (Defs.' Mot. for Summ. J. [hereinafter Defs.' Mot.] Ex. A (Accident Report) at 3 & Ex. E (Watson Dep.) at 15.) Defendant Goldstein responded to the scene of the collision, investigated the accident and prepared a report. (Defs.' Mot. Ex A at 3; Pls.' Resp. to Defs.' Mot. for Summ. J. [hereinafter Pls.' Resp.] Ex. H (Goldstein Dep.) at 27.) Upon his arrival, Defendant Goldstein found Watson slumped over his steering wheel and unconscious. (Pls.' Resp. Ex. H at 27-34.) Watson was taken by rescue personnel to Frankford Torresdale Hospital. (*Id.*; Defs.' Mot. Ex. A at 5.) Plaintiff Jarrett was taken by non-party Officer Wolfinger to Warminster Hospital; Jarrett's injuries are not described by the parties. (Defs.' Mot. Ex. A at 4.) Both vehicles were towed to the public works garage; they were released by Goldstein on June 19, 2006. (*Id.* at 5.) Keystone employee Gerard Murray picked up the tractor trailer the same day. (*Id.*) The pickup truck was moved to Davidson's, an automobile body shop. (*Id.*)

Goldstein's initial report concluded that the "primary cause" of the accident was Plaintiff Jarrett's "entering the highway without safe clearance." (*Id.* at 4.) However, Goldstein also concluded that Watson "would have been able to stop his vehicle before contact had he been traveling the speed limit, [although] he would have [had] to take a drastic evasive action to avoid the crash." (*Id.*) Goldstein thus determined that Watson's excessive speed was a "contributing factor" to the accident. (*Id.*) Plaintiff Jarrett was not cited with any traffic offense; Watson was cited with a registration violation, but not with any offense stemming from the accident. (*Id.*)

On June 27, 2006, counsel for Plaintiff Keystone notified the Department that while photographing Watson's vehicle, he noticed open alcoholic beverage containers inside. (*Id.* at 5; Defs.' Mot. Ex. B (Emails between Lt. Kirgan and Goldstein) at 1.) Defendant Goldstein maintains that he did not have probable cause at the accident scene to suspect that the unconscious Watson was driving while intoxicated and thus did not then search his vehicle; Plaintiffs allege that Goldstein did have probable cause, based on his statement that, "... I attempted to draw blood the night of the accident but the hospital refused to do [sic] take blood because the driver was critical." (*Id.*) On June 28, 2006, Defendant Goldstein inspected the vehicle at Davidson's body shop, but found that "the contents of the vehicle had been removed by the owner." (Defs.' Mot. Ex. A at 5.)

**\*2** The Department investigated the possibility that Watson was driving while intoxicated over the next several months; all of their findings were added as supplements to the initial accident report. (*Id.* at 5-9.) Their investigation revealed that at least one of the "some twenty firefighters and paramedics on the scene" had smelled alcohol inside the Watson vehicle, though he did not know if it was coming from Watson's person. (*Id.* at 8; Pls.' Resp. To Defs.' Statement of Facts [hereinafter Pls.' Resp. to Facts] ¶ 11.) On November 2, 2006, a search warrant was issued to Frankford Torresdale Hospital for Watson's blood test results from the night of the accident. [1] (Defs.' Mot. Ex. A at 9.) Watson's blood alcohol level was found to be .173 and he was charged

with driving under the influence of alcohol ("DUI"). (Defs.' Mot. Ex. D (DUI report) at 2.) Watson pled guilty to the charge and served ninety days in jail. (Defs.' Mot. Ex. E. at 54-55.)

In spite of the newly discovered evidence regarding Watson's intoxication, the Department never changed, and maintains, their ultimate conclusion that Jarrett is primarily liable for the accident and Watson is secondarily liable. (*See* Defs.' Mot. Ex. A.) On July 7, 2006, prior to the blood test results or DUI charge, Watson's insurance carrier notified Plaintiffs that they would not make any payment on their claim because of the finding of fault in the police report. (Pls.' Resp. Ex. M (Letter from Carrier) at 1.) On August 29, 2007, the carrier offered to settle the claim with Plaintiffs for fifty percent, or $3,740.02, "based on comparative negligence." (*Id.* at 2.) Meanwhile, Watson has filed a personal injury suit against Plaintiffs in the Philadelphia Court of Common Pleas. Plaintiffs have not informed this Court whether they have filed any counterclaims or joined any other relevant parties in the state case.

Plaintiffs claim that Defendants Goldstein and Price violated their due process rights under the Fourteenth Amendment by failing to properly investigate the accident, which resulted in a false allocation of fault.[2] They further assert a *Monell* claim against Defendants Harren and **Bensalem** for endorsing and ratifying Defendant Goldstein's deviation from department protocol. Defendants moved for summary judgment on all counts.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson,* 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.,* 530 U.S.133,150 (2000); *see also Goodman v. Pa. Tpk. Comm'n,* 293 F.3d 655, 665 (3d Cir.2002).

## III. DISCUSSION

## A. Plaintiffs have failed to allege a constitutional deprivation by Defendant Goldstein

*Jarrett v. Township of Bensalem, Not Reported in F.Supp.2d (2008)*

**\*3** Plaintiffs first allege that Defendant Goldstein violated their due process rights by filing a false police report. Plaintiffs fail to cite, and the Court has not found, a single case from any jurisdiction that enumerates an affirmative constitutional right to a correct police report. They likewise fail to adduce any right to be free from an incorrect police report, absent a resulting constitutional deprivation of life, liberty, or property. Plaintiffs' claim against Goldstein thus fails as a matter of law, as they have not suffered any constitutional harm.

To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under the color of state law. *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 581 (3d Cir.2003) (*citing Nicini v. Morra,* 212 F.3d 798, 806 (3d Cir.2000)). Section 1983 does not provide any substantive rights; rather, it is vehicle through which a plaintiff may vindicate federal rights conferred elsewhere. *Graham v. Connor,* 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Thus, Section 1983 "does not provide 'a right to be free of injury whenever the State may be characterized as the tortfeasor'-the plaintiff must show a deprivation of a federally protected right." *Bush v. City of Phila.,* Civ. A. No. 98-0994, 1999 WL 554585, at \*3 (E.D.Pa. July 15, 1999) (*quoting Moser v. Exeter Twp. Borough of Council Members,* Civ. A. No. 98-3525,1998 WL 575109, at \*1 (E.D.Pa. Sept. 4, 1998) (internal citations omitted)).

### 1. *There is no constitutional right to a true police report*

Courts in the Eastern District of Pennsylvania and elsewhere have held that the filing of a false police report is not itself a constitutional violation, even when the report is the result of an intentional conspiracy among police officers to cover up police misconduct. *Bush,* 1999 WL 554585, at \*4 (surveying cases). Accepting as true Plaintiffs' thin evidence of police misconduct, and even their conclusion that the report is false, no set of facts can make out a constitutional violation here as a matter of law. [3]

In *Moser,* the plaintiff alleged that a police officer "intentionally, maliciously, and deliberately" minimized the severity of a car accident in the police report and failed to cite the other driver "due to his personal relationship" with the driver's family; she further alleged that another officer approved the false report. *Moser,* 1998 WL 575109, at \*3. Judge Buckwalter granted the defendants' motion to dismiss the Section 1983 claim, holding that "[plaintiff's] allegations fail to implicate federal rights." *Id.* In *Bush,* the plaintiff was involved in a car accident with an off-duty police officer. The plaintiff filed a Section 1983 claim after finding that the investigating officer included only the off-duty officer's untrue version of the facts in the police report, and blamed the accident on plaintiff. In granting summary judgment, Judge Hart held that "there is no fundamental liberty interest in having police perform a proper, impartial automobile accident investigation. That they *should* do so is obvious. That the United States Constitution requires them to do so, however, is simply wrong." *Bush,* 1999 WL 554585, at \*7. Courts in other Circuits uniformly agree, and

Plaintiffs have adduced no evidence here that would support a contrary conclusion of law. *See, e.g., Landigran v. Warwick,* 628 F.2d 736, 744 (1st Cir.1980) ("We do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution."); *Shock v. Tester,* 405 F.2d 852, 855 (8th Cir.1969) (affirming that defendants knowingly and intentionally preparing, filing, and failing to correct a false automobile report could not support a cause of action).

### 2. Plaintifs have shown no constitutional harm from a false police report

**\*4** While there is no constitutional right to an accurate police report, there is a constitutional right to be free from the consequences of the filing of a false report, if-and only if-those consequences "constitute a deprivation of life, liberty, or property." *Bush,* 1999 WL 554585, at \*5 (citing *White v. Tamlyn,* 961 F.Supp. 1047,1056 (E.D.Mich.1997)). Plaintiffs fail to actuallyplead any presently existing constitutional deprivation. In their response to Defendants' motion, however, Plaintiffs aver that they have suffered two constitutional deprivations: (1) "Plaintiffs have already been denied a right of full recovery of the damage to their property by virtue of the dissemination of the report"; (2) "The drunk driver has sued the plaintiffs claiming that he was lawfully operating his motor vehicle on the basis of the faulty investigation. Plaintiffs will now expend time, money, and effort defending a baseless cause of action." (Pls.' Resp. at 14.) Neither is a constitutional harm.

As seems to be a pattern, Plaintiffs fail to cite to any legal authority that would demonstrate a constitutional right to receive what they consider to be "full recovery" on their insurance claim. While it should go without saying that a private insurance company's determinations of fault and recovery do not implicate Section 1983, there is no constitutionally protected "liberty or property interest in obtaining a large insurance settlement." *Hill v. Racine,* Civ. A. No. 04-831, 2005 WL 1657093, at \*2 (E.D.Wis. July 13, 2005). Plaintiffs have produced no evidence that they contested the recovery determination. In any event, should Watson's insurance company continue to reject Plaintiffs' claim when presented with evidence that their insured was convicted of DUI, the insurance company would be the proper entity for Plaintiffs' challenge, not these defendants.

Neither is Plaintiffs' need to defend themselves in Watson's state personal injury lawsuit a constitutional deprivation of property. Simply put, Plaintiff Jarrett was the other driver in a serious collision that left Watson hospitalized and unconscious. Jarrett has adduced no evidence that Watson's lawsuit has anything to do with the police report at issue. Shockingly, Plaintiffs have volunteered that police reports are not admissible evidence in civil lawsuits in Pennsylvania. (Pls.' Resp. ¶ 10) ("Under Pennsylvania law, police reports ... are not evidential."); *see also Rox Coal Co. v. W.C.A.B. (Snizaski),* 570 Pa.60, 807 A.2d 906, 914-15 (Pa.2002) ("A police report prepared by an officer who is not a witness to the accident is inadmissible hearsay evidence and should not be admitted into evidence.") (citing *Holland v. Zelnick,* 469, 329 Pa.Super. 469, 478 A.2d 885, 888 (Pa.Super.1984)). Without any evidence that the police report has caused a constitutional harm in the state case, Plaintiffs cannot in good faith rest their purported constitutional deprivation

on a possibility that is not only unripe, but inadmissible. Because Plaintiffs have failed to plead a constitutional deprivation, their Section 1983 claim against Defendant Goldstein must fail as a matter of law. *See Bush,* 1999 WL 554585, at *4-6. Accordingly, summary judgment is granted as to Defendant Goldstein.

## B. Without a predicate constitutional deprivation by Officer Goldstein, Plaintiffs' *Monell* claim fails as a matter of law

*5 In order to establish liability under Section 1983 against a local government unit or a supervisory official, a plaintiff must demonstrate: (1) the deprivation of a constitutional right; (2) that action was taken pursuant to a custom or policy of the local government unit; and (3) that such action was the cause of the deprivation. *Monell v. Dep't. of Social Servs. of N.Y.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As we have held that Plaintiffs failed to demonstrate a predicate constitutional violation, we need not reach the *Monell* claim, as it too must fail as a matter of law. *Estate of Smith v. Marasco,* 318 F.3d 497, 505 (3d Cir.2003) ("[T]he initial question in a Section 1983 action is whether the plaintiff has alleged a deprivation of a constitutional right at all ."); *see also Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 467 (3d Cir.1989) ("[The municipal defendant] cannot be vicariously liable under *Monell* unless one of [the municipality's] employees is primarily liable under section 1983 itself."). Accordingly, summary judgment is granted to Defendants Harren and **Bensalem**.

## IV. CONCLUSION

For the foregoing reasons, the Court grants summary judgment to Defendants Goldstein, Price, Harren, and **Bensalem** and dismisses all claims.[4] An appropriate Order follows.

## *ORDER*

**AND NOW,** this **26st** day of **March, 2008,** upon consideration of Defendants' Motion for Summary Judgment, Plaintiffs' response thereto, and for the foregoing reasons, it is hereby **ORDERED** that Defendants' motion (Document No. 21) is **GRANTED.** The Clerk of Court is directed to close this case.

## All Citations

Not Reported in F.Supp.2d, 2008 WL 818615

## Footnotes

1    The Court notes the inconsistency between Goldstein's statement that the hospital refused to take Watson's blood and the Department's later receipt of blood test results. While this inconsistency raises questions about Goldstein's credibility, it does not alter the outcome of the case, which turns on a pure question of law.

2    It is unclear to the Court why Officer Price is named as a defendant. In his deposition, Defendant Price testified that he did not perform any investigative duties in this case. (Defs.' Mot. Ex. K (Price Dep.) at 34-37.) Plaintiffs' allegations against Officer Price are that he "sign[ed] off on the [police] report," "apparently made no effort to ensure that crucial evidence was retained or that those investigating the incident followed departmental procedures," and that "he failed to follow up on inaccuracies in the report once Officer Goldstein left the force." Plaintiffs do not cite to any evidence in support of any of these claims. (Pls.' Resp. to Facts ¶ 22.) Indeed, Price's signature appears nowhere on the report, and the record does not support any of the other allegations. (See Defs.' Mot. Ex. A.) As Plaintiff cannot show any constitutional violation by Defendant Price, summary judgment will be granted to him, and Plaintiffs' claim against Price is dismissed.

3    Plaintiffs' Complaint alleged that "Defendants conspired in not properly pursuing the investigation because they knew Watson, and therefore, let their knowledge of Watson color their investigation." (Compl.¶ 21.) As the evidence adduced during discovery has shown no relationship among the officers and Watson, Plaintiffs have changed their theory. Plaintiffs now assert that the Defendants engaged in this alleged conspiracy because logos and symbols on Watson's car demonstrated he was a firefighter, though admittedly "personally unknown to them and from a different and neighboring town." (Pls.' Resp. to Facts ¶ 11.) The Court need not elaborate on this leap of faith, as even an intentional conspiracy to file a false report is not a constitutional violation. Bush, 1999 WL 554585, at *4.

4    Plaintiffs also appear to assert an Equal Protection Clause-based Fourteenth Amendment violation. Plaintiffs, however, do not even attempt to make a prima facie showing; instead, they simply refer to Plaintiff Jarrett in passing as a "foreign national ." This is woefully insufficient to meet Plaintiff's initial burden, and summary judgment will be granted on the Equal Protection Clause claim. See, e.g., Moyer v. Borough of North Wales, Civ. A. No. 00-1092, 2000 WL 1665132, at *6 (E.D.Pa. Nov.7, 2000) ("The plaintiff must allege that she (1) is a member of a protected class; (2) was similarly situated to members of an unprotected class; and (3) was treated differently from the unprotected class.").

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

312 Fed.Appx. 505
This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure
32.1 generally governing citation of judicial decisions issued on or after Jan. 1,
2007. See also Third Circuit LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)
United States Court of Appeals,
Third Circuit.

Claudio JARRETT; Keystone Freight, Appellants
v.
TOWNSHIP OF BENSALEM; Fred Harran;
George Price; Derek Goldstein, Officer, j/s/a.

No. 08-2266. | Submitted Under Third Circuit LAR
34.1(a) Feb. 6, 2009. | Filed Feb. 20, 2009.

**Synopsis**
**Background:** Motorist involved in motor vehicle accident brought § 1983 claim against township,
officer, and others alleging they conspired to file fraudulent police report concerning motor
vehicle accident. The United States District Court for the Eastern District of Pennsylvania, Berle
M. Schiller, J., 2008 WL 818615, granted summary judgment in favor of defendants. Plaintiff
appealed.

**Holdings:** The Court of Appeals, Lourie, Circuit Judge, held that:

[1] mere existence of allegedly incorrect police report did not implicate constitutional rights, and

[2] motorist did not have a constitutionally protected due process liberty interest in obtaining a
insurance settlement.

Affirmed.

**\*505** On Appeal from the United States District Court for the Eastern District of Pennsylvania
(D.C. No. 07-cv-1480), District Judge: Honorable Berle M. Schiller.

## Attorneys and Law Firms

Joseph M. Toddy, Esq., Zarwin, Baum, Devito, Kaplan, Schaer & Toddy, Philadelphia, PA, for Appellants.

Janelle E. Fulton, Esq., David J. Macmain, Esq., Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Township of Bensalem, Fred Harran, George Price, Derek Goldstein.

Before: McKEE, JORDAN, and LOURIE [*], Circuit Judges.

## OPINION OF THE COURT

LOURIE, Circuit Judge.

**\*\*1** Claudio Jarrett and Keystone Freight Corp. (collectively, "Appellants") appeal from a grant of summary judgment in favor of the Township of Bensalem, Fred Harran, George Price, and Derek Goldstein (collectively, "Appellees"). Appellants' claim, filed pursuant to **\*506** 42 U.S.C. § 1983, alleged that Appellees had conspired to file a fraudulent police report concerning a motor vehicle accident involving Jarrett. The District Court granted summary judgment, finding that because Appellants had failed to allege a constitutional violation, the claim failed as a matter of law. *Jarrett v. Twp. of Bensalem,* No. 07-1480, 2008 WL 818615, \*5, 2008 U.S. Dist. LEXIS 23984, at \*16 (E.D.Pa. Mar. 26, 2008). We agree with the District Court that Appellants' claim fails as a matter of law, and we will therefore affirm.

## I. Discussion

On June 16, 2006, Jarrett was driving a tractor-trailer owned by Keystone Freight Corp., when he was involved in an accident with a pickup truck being driven by a nonparty, Jared Watson. One of the named defendants, Officer Goldstein of the Bensalem police department, responded to the scene of the accident. [1] Goldstein investigated the scene and prepared an accident report in which he concluded that the "primary cause" of the accident was Jarrett entering the highway without "safe clearance." Goldstein also concluded that Watson's excessive speed at the time of the crash was a "contributing factor." Neither driver was cited for any offense stemming from the accident.

A few weeks later, after receiving a tip from Keystone Freight's counsel, the Bensalem Police Department began investigating whether Watson had been intoxicated on the night of the accident. Eventually, Watson was charged with driving under the influence. He pled guilty to that charge and served ninety days in jail. In spite of this, the Bensalem Police Department did not alter its police report.

Appellants then brought suit in the Eastern District of Pennsylvania, alleging that Officers Price and Goldstein had violated their civil rights by filing a false police report. *See Jarrett*, 2008 WL 818615, *1, 2008 U.S. Dist. LEXIS 23984, at *2. Appellants argued that because of the police report, they had become subject to a personal injury lawsuit filed by Watson and had been unable to obtain a full recovery on their insurance claim. They further asserted a *Monell* claim against Harren, the Director of Public Safety and Chief of Police, and the township of Bensalem, alleging that they had ratified Goldstein's unconstitutional conduct. *Id.*

The District Court granted Appellees' summary judgment motion, finding that Appellants had no constitutional right to an accurate police report and had failed to show any constitutional harm resulting from the police report. *Id.* at *3-5, 2008 U.S. Dist. LEXIS 23984, *10-15. Appellants appealed that decision.

We review a District Court's grant of summary judgment *de novo*. *Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir.2004). In doing so, we view the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

**\*\*2** Appellants' claim is brought pursuant to 42 U.S.C. § 1983, which "imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution of the United States." *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir.2000). Thus, in order to state a cause of action under Section 1983, two allegations are required. "First, the plaintiff must allege that some person **\*507** has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *see also, e.g., Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir.1995) ("A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law."). It is not disputed on appeal that Appellants' claim meets the state-action requirement for Section 1983 claims. The only issue for us to decide is whether Appellees' conduct deprived Appellants of any federal right.

[1] The District Court determined that Appellants had not been deprived of any federal right. On appeal, Appellants make two arguments challenging that determination. First, Appellants argue that the Court erred in holding that there is no constitutional right to a correct police report. We disagree. Although Appellants claim that the Court's conclusion on this point was erroneous, they fail, to cite any case supporting the contention that a constitutional right to a correct police report exists. The District Court correctly noted that "[c]ourts in the Eastern District of Pennsylvania and elsewhere have held that the filing of a false police report is not itself a constitutional violation." *Jarrett*, 2008 WL 818615, *3, 2008 U.S. LEXIS 23984 at *10; *see Bush v. City of Philadelphia,*

No. 98-0994, 1999 WL 554585, *1, 1999 U.S. Dist. LEXIS 11428, at *4 (E.D.Pa. July 16, 1999) (surveying cases and concluding that there is no constitutional right to a correct police report). Other circuits have reached the same result. *See, e.g., Landrigan v. Warwick,* 628 F.2d 736, 744 (1st Cir.1980) (finding that the mere existence of a false police report does not "deprive[ ] a person of a right secured by the Constitution"); *see also Shock v. Tester,* 405 F.2d 852, 855 (8th Cir.1969). Nor do Appellants provide any rationale for a holding that an individual has a constitutional right to an accurate police report. We thus agree with the District Court that the mere existence of an allegedly incorrect police report fails to implicate constitutional rights.

Appellants' second argument is that they have been subjected to constitutional harm resulting from the erroneous police report. Appellants claim two separate constitutional harms: first, that because of the erroneous police report, they are now defendants in a personal injury lawsuit brought by Watson, and second that because Jarrett was listed as the "primary cause" of the accident, they were unable to obtain a full recovery on their insurance claim.

**3** The District Court found that both of Appellants' claims of constitutional harm failed as a matter of law. First, the Court found that the allegedly unconstitutional police report was not the cause of Watson's civil lawsuit. It stated that Appellants had failed to demonstrate any evidence that the police report was the cause of the lawsuit.

We agree with the District Court that Appellants' argument is unpersuasive. Viewing the evidence in the light most favorable to Appellants, no reasonable fact-finder could conclude that the police report caused Appellants to have to defend themselves in state court. In fact, Appellants acknowledge that the police report is not admissible in Pennsylvania civil lawsuits. *Jarrett,* 2008 WL 818615, *4, 2008 U.S. Dist. LEXIS 23984, at *14; *see Rox Coal v. W.C.A.B.,* 570 Pa. 60, 807 A.2d 906, 914-15 (Pa.2002) ("A police report prepared by an officer who is not a witness to the accident is inadmissible."). That admission weakens Appellants' argument that the police report was the cause of whatever harm was caused by Watson's **508** filing of the civil suit. Moreover, any argument that a police report, which is open to the public, may have stimulated Watson to sue Jarrett is far too attenuated to constitute a constitutional harm. The police report can thus hardly be argued to have been the cause of a lawsuit.

**[2]** Regarding Appellants' second claim, that they have suffered harm by not receiving a full recovery on their insurance claim, the District Court held that "there is no constitutionally protected 'liberty or property interest in obtaining a large insurance settlement.' " *Id.* at *4, 2008 U.S. Dist. LEXIS 23984, at *13-14 (quoting *Hill v. Racine,* No. 04-831, 2005 WL 1657093, *1, 2005 U.S. Dist. LEXIS 46520, at *2 (E.D.Wis. July 13, 2005)). We agree that one does not have a constitutional right to full recovery on an insurance claim. Nor is there a constitutional right even to a full insurance settlement. Section 1983 does not create new substantive rights, but instead provides a remedy for the violation of federal rights, *Baker v. McCollan,* 443 U.S. 137, 144 n. 3,

99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); no such right appears here. Appellants in this case appear to argue that their due process rights guaranteed in the Fourteenth Amendment have been violated. *See* Appellants' Br. at 19. However, to have a constitutionally protected property interest under the Fourteenth Amendment, "a person must have more than an abstract desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Appellants in this case cannot show that they have a "legitimate claim of entitlement" to a complete recovery of an insurance claim. Insurance payouts are subject to, *inter alia,* the policies and procedures of private insurance companies and to the specific facts relating to a particular loss. They are not entitlements, as that term is understood in context of the Fourteenth Amendment. We can find no case, and Appellants do not direct us to any case, that elevates the expectation of a complete insurance payout to a constitutional property interest. Nor do we find any reason to do so here. We thus affirm the District Court's conclusion that Appellants failed to properly state a claim under 42 U.S.C. § 1983.

## II. Conclusion
**\*\*4** For the foregoing reasons, the judgment of the District Court will be affirmed.

## All Citations

312 Fed.Appx. 505, 2009 WL 418623

Footnotes

\*       Honorable Alan D. Lourie, Circuit Judge of the United States Court of Appeals for the Federal Circuit sitting by designation.
1       Another defendant, Officer George Price of the same police department, is listed as a "reviewer" on one of the police reports, but apparently he was not at the scene. The District Court noted that it is unclear why Price was even named a defendant. *Jarrett,* 2008 WL 818615, at \*2 n. 2, 2008 U.S. Dist. LEXIS 23984 at \*6 n. 2.

**End of Document**                                          © 2015 Thomson Reuters. No claim to original U.S. Government Works.