**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MAWUYRAYRASSUNA | : |
| EMMANUEL NOVIHO, | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO.: 15-CV-03151 |
| | : |
| V. | : |
| | : JURY TRIAL DEMANDED |
| LANCASTER COUNTY, et al., | : |
| | : |
| Defendants. | : |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO
THE MOTION TO DISMISS FILED BY DEFENDANTS LANCASTER COUNTY,
<u>SCOTT F. MARTIN AND TODD E. BROWN</u>**

Plaintiff Mawuyrayrassuna Emmanuel Noviho ("Noviho" of "Plaintiff"), by his undersigned counsel, hereby submits this Brief in Opposition to the Motion to Dismiss filed in the above-captioned action by Defendants Lancaster County (the "County"), Scott F. Martin ("Martin") and Todd E. Brown ("Brown")(collectively, the "County Defendants").

**I.  <u>FACTUAL BACKGROUND</u>**

Noviho commenced this action pursuant to 42 U.S.C. § 1983 by filing a Complaint against multiple defendants, including the County Defendants, on June 5, 2015.  Noviho's Complaint contains a very detailed and specific account of the egregious facts giving rise to his claims, all of which must be accepted as true for purposes of ruling on the instant motion to dismiss.  By way of summary, at approximately 6:50 p.m. on Monday, November 12, 2012, Noviho, a licensed commercial truck driver for CR England, Inc., was driving a 2012 Freightliner Cascadia northbound on Pennsylvania State Route 222 in Lancaster County, Pennsylvania.  (Complaint, ¶¶ 12-13).  Gregory Guerrier ("Guerrier"), an experienced operator, was in the passenger seat.  (<u>Id.</u>).  Further, the conditions that evening were clear and dry, and the

vehicle was not hauling a trailer. (<u>Id.</u>, at ¶ 13). As Noviho was operating the tractor, Guerrier noticed two switches on the tractor's dashboard in the off position; specifically, the airbag and axle differential switches. (<u>Id.</u>, at ¶ 14). Guerrier directed Noviho to pull over to the right hand shoulder of State Route 222 in order to activate the switches. (<u>Id.</u>). The tractor needed to come to a complete stop in order to do so. (<u>Id.</u>). According to both Noviho and Geurrier, the entire stop took less than thirty (30) seconds, during which time the headlights and taillights on the tractor remained on. (<u>Id.</u>).

After Noviho activated the aforementioned switches, he turned on the vehicle's four-way flashers and began to drive up the shoulder of the road in order to build speed to access the driving lane of State Route 222. (Complaint, ¶ 15). He did so and approximately sixteen (16) seconds after the tractor started moving, Noviho accessed the right lane of State Route 222 traveling at approximately seventeen and a half (17½) miles per hour. (<u>Id.</u>). At that same time, Katie West ("West") was operating a 1996 Volkswagon Passat northbound on State Route 222 behind Noviho. (<u>Id.</u>, at ¶ 16). There were three (3) passengers in the Passat: Joshua West, West's husband, Jocelyn West, West's daughter, and Joshua Charles West, West's infant son. (<u>Id.</u>). None of the passengers were belted or properly restrained as required by law. (<u>Id.</u>). Jocelyn West was on a booster seat that was not secured in any way to the Passat, and Joshua Charles West was buckled into a car seat that was just resting on the rear seat of West's vehicle. (<u>Id.</u>). West was operating her Passat at a rate of speed in excess of the posted limit. (<u>Id.</u>, at ¶ 17). She was also driving under the influence of heroin and methadone. Her husband was also under the influence of morphine, if not heroin. (<u>Id.</u>).

As a result of the foregoing, West did not or could not pay proper attention to the roadway ahead and she drove her vehicle at seventy (70) miles per hour straight into the rear of

Noviho's tractor without attempting to brake or initiate any evasive maneuver.  (Complaint, ¶ 18).  Noviho and Guerrier felt the violent impact after which Noviho slowly pulled over on the right shoulder of Route 222 and turned off the vehicle's lights and engine and waited for first responders to arrive.  (Id.).  The violent collision was catastrophic: Joshua West died at the scene from multiple traumatic injuries; Joshua Charlie West died at the hospital; and West suffered multiple injuries for which she has received treatment.  (Id., at ¶ 19).   Jocelyn West, miraculously, was uninjured.  (Id.).

Shortly after the tractor pulled off the road, a woman and her husband (unknown to Noviho) arrived at the tractor to check on Noviho and Guerrier.  (Complaint, ¶ 20).  She told Noviho to remain in the tractor until medical personnel arrived.  (Id.).  She also told him that the vehicle that hit them was speeding and driving erratically.  (Id.).  Manheim Township Police Officer David Onda ("Officer Onda") next approached the tractor speaking first to Guerrier who advised the officer that they were struck from behind.  (Id., at ¶ 21).  Guerrier indicated that he was not injured and Officer Onda then proceeded to check on Noviho.  (Id.).  Officer Onda directed Noviho to remain in the tractor and that he would have an ambulance dispatched for him.  (Id.).  Noviho complied with that direction and, shortly thereafter, Noviho and Guerrier were transported by ambulance to a local hospital.  (Id.).

At approximately 8:20 p.m. on November 12, 2012, Defendant Christopher Dissinger ("Dissinger"), also a Manheim Township Police Officer, approached Noviho at the hospital and asked Noviho if he could speak with him about the crash.  (Complaint, ¶ 23).  Noviho briefly described the accident and gave Defendant Dissinger information regarding the events of the day.  (Id.).  After Defendant Dissinger spoke with Noviho, Defendant Dissinger contacted Defendant Assistant District Brown who directed him to get a blood sample from Noviho.  (Id.).

Dissinger requested Noviho's consent for the blood sample.  Noviho consented and the test results confirmed that Noviho was not under the influence of alcohol or any drug at the time of the crash.  (Id.).

While Defendant Dissinger was interviewing Noviho, another Manheim Township Police Officer, Detective Robert Beck ("Beck"), was interviewing Guerrier.  (Complaint, ¶ 24).  Based on Defendant Dissinger's and Beck's interviews at the hospital, they were aware of, inter alia, the following:

- a woman told Noviho that the car that hit him was speeding and driving erratically;

- that there was a car proceeding northbound on State Route 222 about three (3) to four (4) car lengths ahead of the tractor which was illuminating the road;

- that it was very dark outside and that Noviho was driving the tractor with the headlights and taillights activated, otherwise they could not have seen where they were going; and

- Noviho had pulled off State Route 222 in order to activate the above-referenced switches and that he was struck from the rear very shortly after accessing the driving lane of State Route 222.  (Id.)

The above-mentioned material facts, and many others, were ignored, concealed, omitted and/or withheld by law enforcement when the seven (7) month "investigation" was closed and charges were filed against Noviho.  (Complaint, ¶ 24).  In fact, during this extended "investigation", a high-profile civil attorney for West and her politically-powerful brother, Defendant Martin, a Lancaster County Commissioner, met with various representatives of the District Attorney's office, including Lancaster County District Attorney Craig W. Stedman ("Stedman") and Brown.  (Id.).  Again, upon information and belief, during this time, Martin and those acting in concert with him lobbied for criminal charges to be filed against Noviho, not West, and, in doing so, wrongfully abused their personal and political influence with Defendant

4

Dissinger, Brown and Stedman.  (Id.).  The last meeting with Stedman and Brown was held shortly before charges were filed against Noviho.  (Id.).  The charges were filed against Noviho for the purpose of enhancing the value of West's and the Martin family's now pending civil actions.  (Id.).

On June 7, 2013, Defendant Dissinger presented an arrest warrant for Noviho, along with a supporting affidavit of probable cause, to Magisterial District Judge David P. Miller ("Judge Miller") for approval.  (Complaint, ¶ 25).  Both of those documents were prepared with the aid and assistance of Brown who lead, directed and/or supervised the purported seven (7) month "investigation".  (Id.).  Based on the incomplete, knowingly false and materially misleading affidavit of probable cause, Judge Miller approved the request and Noviho was charged.[1]

As summarized below and set forth more fully in the Complaint, had a truthful account of the crash been presented to Judge Miller, West, not Noviho, would have been charged, and the value of the West-Martin family civil actions would have plummeted, perhaps to zero (0).  (Id.).

- First, West was not travelling sixty-five (65) miles per hour at the time of the crash as represented by Defendant Dissinger's affidavit of probable cause.  James Schlinkman ("Schlinkman"), a purported witness to the accident, admitted to police on November 12, 2012, that he was travelling seventy (70) miles per hour behind West's vehicle and that he was not gaining ground on her Passat.  (Id., at ¶ 27);

- Second, West was operating her vehicle under the influence of heroin and other prescription medication, and a burnt spoon used for heating heroin was found in her purse at the crash site.  Defendant Dissinger concealed, withheld and/or omitted this information from his affidavit of probable cause.  (Id., at ¶¶ 28-29);

- Third, West made no effort to brake or take any evasive action before the crash.  Rather, she drove her Passat straight into the rear of Noviho's tractor at seventy (70) miles per hour.  Defendant Dissinger and Brown elected to tell Judge Miller

---

[1]	The charges were as follows: Offense 1 – Homicide by Vehicle (2 counts); Offense 2 – Aggravated Assault by Vehicle (1 count); Offense 3 – Periods for requiring lighted lamps (1 count); Offense 4 – Minimum Speed Regulation (1 count); Offense 5 – Vehicular hazard signal lamps (1 count); Offense 6 – Moving stopped or parked vehicle (1 count).  (Id.).

only that West did not have time to appropriately perceive and react to Noviho's tractor.  (Id., at ¶ 30);

- Fourth, West's children were not properly restrained and/or secured in safety or booster seats as mandated by Pennsylvania law.  Despite the foregoing, Defendant Dissinger and Brown contrived their affidavit of probable cause to create the knowingly false impression that West's children were properly restrained in order to prevent Judge Miller from considering West's culpability for the crash.  (Id., at ¶ 31);

- Fifth, three (3) witnesses (Schlinkman, Guerrier and Noviho) advised police on November 12, 2012, that a woman at the crash scene reported that West's Passat was travelling erratically and at an excessive rate of speed prior to the crash. Defendant Dissinger and Brown concealed, withheld and/or omitted this fact from Judge Miller to shield West from judicial scrutiny in this matter.  (Id., at ¶ 32); and

- Sixth, Defendant Dissinger presented as unchallenged the averment to Judge Miller that Noviho's vehicle was travelling in total darkness on State Route 222 without any headlights, taillights or other illumination.  In contrast, both Noviho and Guerrier represented to the police on November 12, 2012, that the tractor's headlights and taillights were illuminated at all times with respect to the crash and that the tractor's four-way flashers were engaged while Noviho was driving on the right-hand shoulder of State Route 222.  (Id., at ¶¶ 33-34).

Of significant importance, Defendant Dissinger and Brown accepted as true the statements of three (3) purported witnesses, West, Schlinkman and Michelle Levitsky ("Levitsky"), and rejected as false the statements of Noviho and Guerrier.  (Id.).  However, Defendant Dissinger and Brown knew, as of June 7, 2013, that neither West, Schlinkman nor Levitsky were credible, consistent or otherwise worthy of belief.  (Id.).  Moreover, on significant issues, their statements were inherently irreconcilable.  (Id.).  The specific details which establish that the three (3) witnesses were not credible or worthy of belief are set forth more fully in the Complaint.  (Id., at ¶¶ 35-51).  In essence, Defendants Dissinger and Brown failed to disclose to Judge Miller any of the material exculpatory and/or contradictory evidence that was uncovered during the purported seven (7) month "investigation".

As previously stated, due to the knowingly false and materially misleading affidavit of probable cause, Noviho was unlawfully charged with multiple felonies, including vehicular homicide, arising from an automobile/tractor-trailer crash that was, in fact, caused by Martin's sister, West.  (Complaint, ¶ 1).  Thus, rather than having West held accountable for her acts, Martin, and those acting in concert with him, caused criminal prosecutors and detectives under his direct political influence to bring felony charges against Noviho in an effort to enhance the value of West's civil action.  (Id., at ¶ 3).

Despite the serious nature of the charges being "investigated" by Defendant Dissinger and Brown, as well as other local law enforcement officers, West did not engage criminal defense counsel like she did for her prior, less significant drug-related arrests.  (Complaint, ¶ 4). Rather, as stated above, West and the Martin family engaged a prominent Philadelphia-based personal injury firm to prosecute civil actions on behalf of West, her husband and her two (2) minor children.  (Id.).  Upon information and belief, West did not engage defense counsel because Martin knew that Stedman, a close friend and fellow Republican, would not prosecute West for these serious crimes.  (Id.).  He was also comforted by the fact that the lead investigator, Defendant Dissinger, was a high school friend of his and a sports teammate.  (Id.). Their longtime relationship remains cordial to date and they follow each other on social media. (Id.).  Further, upon information and belief, Martin exercised his personal and political influence over Stedman, Brown and/or Defendant Dissinger to charge Noviho for the reasons set forth above.  (Id.).

II.   **ARGUMENT**

   **A.  Legal Standard**

According to Rule 8 of the Federal Rules of Civil Procedure, a complaint is required to include "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2).   The pleading standard announced in Rule 8 does not require "detailed factual allegations", but does require more than labels, conclusions, and "a formulaic recitation of a cause of action's elements".   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-1965 (2007) (citations omitted).

When applying this Rule in the context of a motion to dismiss, it is well-settled that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).   While courts must accept as true all factual allegations contained in the complaint, the same tenet is inapplicable to legal conclusions.   Id.   Thus, "[a] claim has facial plausibility when the Noviho pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Id. (citation omitted).   Stated simply, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id., 556 U.S. at 679, 129 S. Ct. at 1950.

   **B.  Noviho sets forth plausible claims for unlawful seizure, wrongful arrest and false imprisonment against Defendant Brown in Count II of the Complaint.**

      **1.   Assistant District Attorney Brown Is Not Absolutely Immune From Suit For The Pre-Arrest Investigative Conduct Complained of In This Action.**

Defendant Brown is not entitled to absolute immunity as he initially contends where, as here, he is being sued for acts taken in his investigatory capacity prior to Noviho's arrest.  To this end, Plaintiff asserts the following claims against Defendant Brown:

8

- Count II 42 U.S.C. § 1983 - Unlawful Seizure/Wrongful Arrest – False Imprisonment (Investigative Capacity Only); and

- Count IV 42 U.S.C. § 1983 - Conspiracy to Violate Civil Rights -Unlawful Seizure/Wrongful Arrest – False Imprisonment (Investigative Capacity Only).

(Complaint, pp.27-31, 35-37).   As made clear in the Complaint, the claims asserted against Defendant Brown in Counts II and IV are "not based on any acts and/or omissions by Defendant Brown during the **post-arrest prosecution** of Noviho".  (Id. at ¶ 69; emphasis added.)  Rather, said claims are "based on the acts and/or omissions by Defendant Brown during his **pre-arrest investigation** into the criminal offenses eventually filed against Noviho".  (Id.; emphasis added.)

Contrary to Defendant Brown's erroneous assertion, the suit against him in "his investigative capacity" is not a mere "legal conclusion" or "a disingenuous attempt to avoid the absolute prosecutorial immunity that is afforded to prosecutors".  (Supporting Brief at p.7). Defendant Brown likewise erroneously states that "there is no good faith basis . . . to allege that Brown did anything other than act as a prosecutor".  (Id.)  Noviho's Complaint very clearly articulates Defendant Brown's role in the pre-arrest investigation at issue herein, including the following:

- Defendant Brown served as an Assistant District Attorney of Lancaster County assigned to handle all aspects of the investigation into the events in question, including the preliminary investigation prior to the initiation of any criminal charges against Noviho;

- Defendant Brown was directly responsible for all aspects of the preliminary investigation, including the assignment, control, oversight and supervision of the other law enforcement personnel that were involved in said investigation;

- In fact, because of the high-profile nature of the case, Defendant Brown played an active role in the investigation of Noviho, and was at all times consulted and kept informed of every aspect of the investigation as it developed, including the information, statements and/or evidence obtained;

9

- Defendant Brown actively participated, collaborated and/or assisted other law enforcement personnel in discussing and reviewing the evidence and, together, made a collective decision about whether there was probable cause to make an arrest and what information should be included in the Affidavit of Probable Cause prior to the initiation of any criminal proceedings against Noviho;

- In his capacity as an investigator, Defendant Brown likewise knowingly and/or deliberately, or with a reckless disregard for the truth, concealed/ignored/withheld/omitted material facts and/or exculpatory and/or contradictory evidence from the Affidavit of Probable Cause.  Moreover, he included statements in the Affidavit of Probable Cause that he knew or should have known were false or not credible or trustworthy for the sole purpose of procuring the unlawful arrest of Noviho; and

- In fact, the evidence of record demonstrates that Defendant Brown knew that the Affidavit of Probable Cause contained only those facts which were allegedly incriminating to Noviho, but concealed, ignored, withheld and/or omitted all of the inconsistencies, material facts and/or exculpatory/contradictory evidence which tended to establish Noviho's innocence.  (Complaint, ¶¶ 70-76).

It is clear from these allegations -- which must be accepted as true for purposes of ruling on the instant motion to dismiss -- that Plaintiff's clams against Defendant Brown are based entirely on his investigative role in directing, assisting and/or otherwise participating with the other law enforcement personnel in gathering information, statements and/or evidence prior to the initiation of any criminal proceedings against Noviho.  These allegations go well beyond legal conclusions, and are not based "upon information and belief" as Defendant Brown erroneously proffers in his supporting brief.  (Supporting Brief at p.7).

In fact, the controlling case law clearly provides that Defendant Brown's conduct as complained of herein is, in fact, investigative and not deserving of the absolute immunity defense.  To this end, when performing the types of investigatory functions alleged by Noviho in the Complaint, the Third Circuit has concluded that a prosecutor does not enjoy the protections of absolute immunity.  As emphasized in Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir. 1999), "the Supreme Court has been 'quite sparing' in its recognition of absolute immunity".  Id.

10

at 355 (quoting Burns v. Reed, 500 U.S. 478, 486-87 (1991)). The "Supreme Court directs a 'functional' approach to immunity issues, and requires the official seeking absolute immunity to bear the burden of showing it is justified for the function in question." Id. at 355-56 (quoting Burns, 500 U.S. at 486-87; citing Buckley v. Fitzsimmons, 509 U.S. 259 (1993)). Significantly, where a prosecutor is performing an investigative function, a prosecutor is not protected by absolute immunity. Id. at 356 (quoting Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994)). Of particular relevance here, the Carter Court stated:

> The [Supreme] Court expressly rejected an argument that a prosecutor's directory role in police investigations is sufficiently related to her advocate function. The Supreme Court explained that "[a]lmost any action by a prosecutor . . . could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive".

Id. at 356 n.58 (quoting Burns, 500 U.S. at 495).

The Third Circuit also highlighted the investigative/prosecutorial distinction in Kulwicki v. Dawson, 969 F.2d 1454 (3d Cir. 1992), wherein the Court explained:

> Merely investigative evidence-gathering is not absolutely protected . . . . Evidence gleaned prior to the filing is deemed investigative. Certain pre-filing interactions with the police are "investigative, such as directing evidence gathering.

Id. at 1465. Accordingly, it is well-settled that where -- as here -- a prosecutor "assists, directs or otherwise participates with the police'" in the "'acquisition of evidence prior to indictment undertakes conduct which is beyond the scope of his litigation-related duties', and absolute immunity is thus not available". Vetere v. O'Reilly, 1990 U.S. Dist. LEXIS 11120, * (D. N.J. Aug. 21, 1990)(quoting Barbera v. Smith, 836 F.2d 96, 100 (2d Cir. 1987)). See also Matheny v. County of Allegheny, 2010 U.S. Dist. LEXIS 24189, * 6 (W.D. Pa. March 16, 2010)(prosecutor

not entitled to absolute immunity because the act complained of "did not occur during the prosecution phase of plaintiff's criminal case").

Defendant Brown's attempt to recast his pre-arrest involvement into the investigation of Noviho as a prosecutorial act was rejected by the Supreme Court in Buckley v. Fitzsimmons, 509 U.S. 259 (1993). In Buckley, the Supreme Court stressed:

> A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventual arrested, indicted, and tried, that work may be retroactively described as "preparation for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial. When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.

Id. at 276. See also Odd v. Malone, 538 F.3d 202, 213 (3d Cir. 2008)(quoting Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 29 (1ˢᵗ Cir. 1995))("The prosecutorial nature of an act does not spread backwards like an inkblot, immunizing everything it touches").

Consistent with the controlling precedent outlined above, Defendant Brown is not protected by absolute immunity because the claims asserted against him are predicated entirely upon his investigative role in directing, assisting and/or otherwise participating with the officers in gathering information, statements and/or evidence prior to the initiation of any criminal proceedings against Noviho. See Spiess v. Pocono Mountain Regional Police Department, 2013 U.S. Dist. LEXIS 41814, ** 40-43 (M.D. Pa. Mar. 26, 2013)(denying summary judgment to assistant district attorney on absolute immunity grounds where his "actions were akin to merely advising officers as to probable cause or directing the gathering of evidence in an investigatory capacity").

### 2.  **Motor Vehicle Code Offenses**[2]

Similar to the argument advanced by Defendant Dissinger in support of his motion to dismiss, Defendant Brown likewise contends that Count II must be dismissed because even though a jury acquitted Noviho of the vehicular homicide/assault charges challenged in this action, the trial judge convicted Noviho of three (3) separate summary Motor Vehicle Code violations, thereby establishing probable cause for the "seizure" in question as to all charges. Defendants' argument is based on the following rationale articulated by the courts: if an individual is arrested/seized for a series of charges, and probable cause is established for one of the charges, the arrest/seizure is justified for all offenses.

Notwithstanding the criminal procedural argument advanced by Noviho in opposition to Defendant Dissinger's motion, this argument also fails from its inception for the simple reason that Noviho was not arrested or seized for any of these summary traffic offenses.  Rather, Noviho was arrested/seized almost seven months after the alleged incident pursuant to an Arrest Warrant for felony vehicular homicide charges, and not any of the summary traffic offenses relied upon by Defendants.  (See Arrest Warrant, a true and correct copy of which is attached hereto and incorporated herein by reference as Exhibit "1", indicating "Offense Date: 11/12/2012"; Date of Warrant as "June 07, 2013"; and "Reason For Warrant: Felony").

Because Noviho was not arrested/seized for the summary traffic offenses relied upon by Defendants, the rationale for the concept of -- probable cause for one seizure is probable cause for all seizures -- simply does not apply here.  In short, it is clear that the "seizure" which occurred here resulted solely from the Arrest Warrant issued for the felony charges, all of which

---

[2]      As requested in Plaintiff's response to the Dissinger motion, Plaintiff requests, in the alternative, that this Court stay disposition of the instant motion to dismiss pending resolution of Noviho's outstanding appeal of the three (3) summary traffic convictions.

terminated in favor of Noviho by way of the jury's acquittal. The "seizure" did not result from the separate summary traffic offenses adjudicated by the trial court. For these reasons, the rationale for the concept of seizure for one charge equals seizure on all charges does not apply here, and Defendant Brown's motion must be denied.[3]

### 3. This is not a false report, failure to investigate and/or failure to charge case.

Defendant Brown next cites a series of cases in an effort to recast Novioho's wrongful arrest case as a failure to investigate and/or failure to charge case. (Supporting Brief at pp.10-12). While West could have and should have been charged in this case, this is not a false report, failure to investigate and/or failure to charge case. This is a wrongful arrest/false arrest claim, and the Complaint makes that point very clear. (See Complaint, pp.27-31, ¶¶ 67-84).

To state a Fourth Amendment claim for false arrest, a plaintiff must establish: (1) there was an arrest; and (2) the arrest was made without probable cause. Dowling v. City of Phil., 855 F.2d 136, 141 (3d Cir. 1988). Moreover, it is well-established that questions of probable cause in a civil rights suit for false arrest/wrongful arrest are generally ones for the jury, particularly where "the probable cause determination rests on credibility conflicts". Jaslar v. Zavada, 2009 U.S. Dist LEXIS 1772, ** 8-9 (M.D. Pa. Jan. 12, 2009)(Vanaskie, J.)(reversing Report and

---

[3]     In Defendant Dissiger's reply brief, he contends that Plaintiff's argument on the summary offenses is without merit because the Fourth Amendment only concerns itself with probable cause and the "objective reasonableness of an officer's conduct". In support of his argument, he relies primarily on Huff v. Cheltenham Twp., WL 4041963 (E.D. Pa. July 1, 2015), wherein the Court emphasized that the Fourth Amendment reasonableness analysis is not dependent upon Pennsylvania Criminal Procedure, but upon whether the "seizure" was supported by probable cause. Again, this argument is without merit for the simple reason that the "seizure" in this case resulted from an Arrest Warrant issued for the felony charges. Noviho was not "seized" for any of the summary traffic offenses. And, as set forth more fully below, a jury can easily conclude that the "seizure" for these felony offenses was not objectively reasonable and, therefore, not supported by probable cause when accepting as true the well-pleaded allegations of Noviho's Complaint against the long-standing precedent outlined herein.

Recommendation of magistrate judge who granted summary judgment in favor of defendants on probable cause issue).  See also Anderson v. Goga, 2011 U.S. Dist. LEXIS 115041, * 13 (W.D. Pa. Oct. 5, 2011)("In a § 1983 case, whether probable cause exists is ordinarily a question of fact for the jury").   It is also well-established that the court "must take a 'totality-of-the-circumstances approach'" when "analyzing whether probable cause existed for an arrest".  Reedy, 615 F.3d at 211 (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)).

Defendant Brown also loses sight of the fact that where -- as here -- wrongful arrest cases are premised on the alleged omission of material facts/exculpatory evidence from an affidavit of probable cause, there is usually no dispute that the affidavit, "on its face", is sufficient to support a finding probable cause by a magisterial district judge.  Jaslar, 2009 U.S. Dist. LEXIS 1772 at * 17.  See also Anderson, 2011 U.S. Dist. LEXIS 115041 at ** 13-14.  That is why the issue of probable cause must "be decided in the context of all alleged material misrepresentations in and omissions from the probable cause affidavit for which there is evidentiary support".  Jaslar, 2009 U.S. Dist. LEXIS 1772 at * 13.  To this end, "the materiality of the alleged misstatements and purported omissions is determined by excising from the probable cause affidavit the alleged 'offending inaccuracies and insert[ing] the facts recklessly omitted, and then determine[ing] whether or not the corrected warrant affidavit would establish probable cause'".  Jaslar, 2009 U.S. Dist. LEXIS 1772 at ** 10-11 (alterations in original)(quoting Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000)).  "The purpose of this analysis is to assure that a police officer is not free to disregard plainly exculpatory evidence when preparing the affidavit of probable cause".  O'Hara v. Hanley, 2011 U.S. Dist. LEXIS 26180, * 19 (W.D. Pa. March 15, 2011).

Moreover, the Third Circuit has concluded that "[a]ssertions can be made with a reckless disregard for the truth 'even if they involve minor details -- recklessness is measured not by the

relevance of the information, but the demonstration of willingness to affirmatively distort the truth'".  Reedy v. Evanson, 615 F.3d 197, 213 (3d Cir. 2010)(alteration added) (quoting Wilson, 212 F.3d at 783).  As such, "'omissions are made with a reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know' in making a probable cause determination".  Id.  See also Anderson, 2011 U.S. Dist. LEXIS 115041 at * 14; Hayes v. City of Philadelphia, 2005 U.S. Dist. LEXIS 27916, ** 15-17 (E.D. Pa. 2005)(Information from investigation which is omitted and contradicts facts set forth in the affidavit of probable cause is information a judge would want to know when determining probable cause).

As further explained by the Third Circuit in Wilson, *supra*:

> On the other hand, one of the reasons for requiring a neutral magistrate to evaluate probable cause is that an uninterested party is presumably better suited to review and evaluate the facts than an officer pursuing a lead.  The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence.  Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.  **It follows that a police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence.**

Wilson, 212 F.3d at 787 (emphasis added).

Indeed, arresting officers are not free to conceal from the magistrate judge the conflicting information and exculpatory evidence because it creates the "'unnecessary danger of unlawful arrest'".  615 F.3d at 223 (quoting Malley v. Briggs, 475 U.S. 335 (1986)).  See also Anderson, 2011 U.S. Dist. LEXIS 115041 at ** 17-18 ("alleged victims' mental condition, her previous history of sexual assault accusations, and other information known to defendant officer sufficient to cast doubt on the veracity of [victim's] accusations" would "suggest the required

16

element for Plaintiff's claims that such facts would have been pertinent to the essential inquiry of probable cause"); <u>Malley</u>, 475 U.S. at 345-46 (because magistrate judges are fallible and may make mistakes, it is "reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment").

Accordingly, Defendants Brown and Dissinger are not excused from reporting conflicting and exculpatory evidence simply because of the existence of alleged inculpatory evidence, which they seem to suggest throughout their briefs. <u>O'Hara</u>, 2011 U.S. Dist. LEXIS 26180 at * 21 ("While there was inculpatory evidence, that does not excuse the failure to report exculpatory evidence"). As emphasized by the Third Circuit in <u>Wilson</u> and reaffirmed in <u>Reedy</u>, *supra*, "an officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists". 615 F.3d at 213-14. Accordingly, Defendants' repeated reference to the accusations of the alleged victim and eyewitnesses does not change the result.

As explained by the court in <u>O'Hara</u>, while the accusations of the victim and the forensic interview "appear compelling", a genuine issue of material fact exists as to whether there was probable cause at the time arrest where -- as here -- "there is a substantial amount of contradictory evidence that was available to [defendant] that was not contained in the affidavit of probable cause". <u>Id</u>. at * 22. <u>See also</u> <u>Roach v. Marrow</u>, 2012 U.S. Dist. LEXIS 43075, * 21 (M.D. Pa. March 28, 2012)("if the defendant officer relies solely on reports of eyewitnesses whose credibility is in dispute, then there may not be probable cause to warrant an arrest"); <u>Wilson</u>, 212 F.3d at 790 ("Independent exculpatory evidence or substantial evidence of the witnesses' own unreliability that is known by the arresting officer could outweigh the identification such that probable cause would not exist"); <u>Harris v. Jacobs</u>, 2012 U.S. Dist.

LEXIS 134044, * 21 (E.D. Pa. Sept. 19, 2012)(an officer has a "duty to further investigate when plainly exculpatory evidence or circumstances indicating a witness's unreliability are known"). The same reasoning and conclusion apply with equal force here.

As demonstrated in more detail above and in Noviho's Complaint, Defendants Brown and Dissinger were in possession of evidence of the victim's and/or witnesses' unreliability and complete lack of credibility.  Incredibly, this evidence was ignored by Defendants Brown and Dissinger and never made its way into the affidavit of probable cause.  More importantly, the evidence was concealed from the magistrate judge who issued the warrant for Noviho's arrest. See, e.g., Toth v. Rocco, 2011 U.S. Dist. LEXIS 135178, * 19 (Nov. 23, 2011 W.D. Pa. 2011)(when officers are in possession of information which calls into question the credibility of the victim, including information relating to the victims' past, "the sufficiency of the probable cause for the arrest is a question properly left for the jury"); Vassallo v. Fox, 2004 U.S. Dist. LEXIS 24799, ** 18-19 (E.D. Pa. Dec. 9, 2004)(when reliability of witness is in doubt, "the sufficiency of the affidavit to establish probable cause is also in doubt").

As further detailed above and in his Complaint, Noviho alleges that Defendants Brown and Dissinger inserted into the affidavits of probable cause only those facts which were allegedly incriminating to Noviho, and then ignored and omitted all of the exculpatory evidence which proved his innocence.  This they cannot do.  Here, it can easily be concluded based on Novioho's well-pleaded allegations -- which must be accepted as true -- that Defendants Brown and Dissinger included in the affidavit of probable cause only those facts which were allegedly incriminating to Noviho, and then ignored and omitted the substantial conflicting, inconsistent and exculpatory evidence; that the omission of these inconsistencies and exculpatory evidence constitutes a reckless disregard for the truth; that Defendants Brown and Dissinger did not want

the judge to know the "totality of the circumstances" because, if disclosed, the judge would not issue a warrant for Noviho's arrest; that Defendants Brown and Dissinger manipulated the affidavit of probable cause for the sole "purpose of procuring a prosecution for which they otherwise lacked probable cause". <u>Jaslar</u>, 2009 U.S. Dist. LEXIS 1772 at * 20 n.9.; that the inclusion of these material and exculpatory facts could have easily avoided what the Third Circuit appropriately described as the "'unnecessary danger of unlawful arrest'". <u>Reedy</u>, 615 F.3d at 223 (<u>quoting</u> <u>Malley</u>, 475 U.S. 335); and that, at the time the arrests were made, the facts and circumstances within Defendant Brown and/or Dissinger's knowledge were not sufficient to warrant a prudent man believing that Noviho committed the offenses for which he was charged. <u>See</u> <u>Reedy</u>, 615 F.3d at 215.  <u>See</u> <u>also</u> <u>Vassallo</u>, 2004 U.S. Dist. LEXIS 24799 at * 22 ("A reasonably well-trained officer would be aware that such an action, manipulating a warrant application and related investigations to obtain the arrest of another without probable cause, is unlawful").

In sum, the well-pleaded allegations in Noviho's Complaint, all of which are predicated upon and consistent with, the long-standing precedent highlighted above, make it very clear that this is a wrongful arrest/false arrest claim, and not a failure to investigate or a failure to charge case as Defendant Brown erroneously suggests.  (<u>See</u> Complaint, pp.27-31, ¶¶ 67-84).  In fact, not once in Count II does Noviho mention Katie West, the failure to investigate West, the failure to charge West and/or the failure to arrest West.  (<u>See</u> <u>id</u>.)  For these reasons, the cases cited by Defendant Brown in a self-serving effort to recast Noviho's claims are easily distinguishable from the matter *sub judice*.  <u>See</u> <u>Jarrett v. Township of Bensalem</u>, 2008 U.S. Dist. LEXIS 23984, * 2 (E.D. Pa. Mar. 26, 2008)(plaintiff filed civil rights claim against officer for filing report that falsely blamed him for automobile accident; not a wrongful arrest claim based on lack of

probable cause); <u>Bush v. City of Phila.</u>, 1999 U.S. Dist. LEXIS 11428, \*\* 7-8 (E.D. Pa. July 16, 1999)(plaintiff filed civil rights claim against officer for filing false accident report in connection with automobile accident; not a wrongful arrest claim based on lack of probable cause); <u>Estate of Moser v. Exeter Twp. Borough Council Members</u>, 1998 U.S. Dist. LEXIS 14012, \*\* 9-10 (E.D. Pa. Sept. 9, 1998)(plaintiff estate administrator filed civil rights claim on behalf of decedent against officer for filing report which minimized severity of automobile accident; not a wrongful arrest claim based on lack of probable cause).

### C. Noviho sets forth plausible claims for conspiracy in Counts IV and V of the Complaint.

#### 1. Summary Traffic Convictions.

Defendant Brown first contends that the conspiracy claims fail because the underlying wrongful arrest and malicious prosecutions claims fail due to Noviho's convictions on the summary traffic offenses outlined more fully above.  This argument is misguided for the same reasons articulated above, which are incorporated herein by reference.

#### 2. Noviho's conspiracy claim is not based on "shameless, defamatory innuendo and rank speculation" as Defendant Brown erroneously contends.

In order to state a claim for conspiracy under § 1983, a plaintiff must allege that two or more conspirators reached an agreement to deprive him or her of a constitutional right "under color of state law."  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 150 (1970); <u>Parkway Garage, Inc. v. City of Philadelphia</u>, 5 F.3d 685, 700 (3d Cir. 1993).  Although there must be some proof of an understanding or concerted effort or plan to cause harm or injury to the Plaintiff to support a § 1983 conspiracy claim, the proverbial "smoking gun" evidence is not required.  <u>Bendiburg v. Dempsey</u>, 909 F.2d 463, 469 (11th Cir. 1990), <u>cert</u>. <u>denied</u>, 500 U.S. 932 (1991) (rejecting

"smoking gun" requirement and holding that "[n]othing more than 'an understanding' and 'willful participation' is necessary to show the kind of joint action that will subject [a defendant] to § 1983 liability").

Moreover, a § 1983 conspiracy can be, and often is, proven by circumstantial evidence. Parkway Garage, 5 F.3d at 698 ("[o]ne can hardly expect [the defendants] to admit wrongdoing; circumstantial evidence . . . usually will suffice."); accord, Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 668 (1989) ("a plaintiff is entitled to prove a defendant's state of mind through circumstantial evidence"). Where a conspiracy claim is based on circumstantial evidence, the claim must be assessed by the finder of fact. See Lessard v. Jersey Shore State Bank, 702 F. Supp. 96, 100 (M.D. Pa. 1988). As the United States Supreme Court has emphasized:

> The proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of evenhanded justice.

Pollier v. Columbia Broadcasting Sys., Inc., 368 U.S. 464, 473 (1962).

Contrary to Defendant Brown's self-serving attempt to downplay the significance of the relationships and actions at issue in this case, Noviho's Complaint adequately sets forth sufficient factual allegations from which reasonable jurors can, and indeed should, conclude that Defendants Brown, Dissinger and Martin conspired to violate Noviho's civil rights. These well-pleaded facts include the following:

- To further the personal, political and financial goals of a powerful Republican County Commissioner in Lancaster County, Defendant Martin, Noviho was unlawfully charged with vehicular homicide and multiple related felonies

21

concerning an automobile/tractor trailer crash that was, in fact, caused by Martin's sister, Katie West (Complaint, ¶ 1);

- Rather than having his sister held accountable for her acts, Martin, caused criminal prosecutors and detectives under his direct political influence and control to bring felony charges against Noviho, not West, for, inter alia, homicide by vehicle and aggravated assault by vehicle. Those charges, however, were based on knowingly false and irreconcilably conflicting statements of purported witnesses. Defendant Dissinger, a long-time friend of Defendant Martin, was the lead detective on the seven (7) month "investigation" into the crash. He was also a social media "friend" of West. When Defendant Dissinger appeared before a magisterial district judge, the Honorable David P. Miller, to obtain a warrant for Noviho's arrest, Defendant Dissinger intentionally concealed the highly relevant facts regarding West's role and culpability in the crash. Defendant Dissinger also failed to disclose any of the material exculpatory and/or contradictory evidence that was uncovered during the seven (7) month "investigation" that he conducted with and under the direction and supervision of Defendant Brown (Complaint, ¶ 3);

- Despite the serious nature of the charges being investigated by Defendants Brown and Dissinger, West did not engage criminal defense counsel like she did for her many prior drug-related arrests. Rather, within days of the crash, West and the Martin family engaged a prominent Philadelphia-based personal injury firm to prepare and prosecute civil actions on behalf of West, her husband and her two (2) minor children. Upon information and belief, West did not engage defense counsel because Defendant Martin knew that Lancaster County's District Attorney, Craig W. Stedman, a close friend and fellow Republican, would not prosecute West for these serious crimes. He was also comforted by the fact that the lead investigator, Defendant Dissinger, was a high school friend of his and a sports teammate. Their relationship today remains cordial and they follow each other on social media. Further, upon information and belief, Defendant Martin exercised his personal and political influence over the District Attorney, Defendant Brown and/or Defendant Dissinger to charge Noviho in order to materially enhance the value of the above-referenced civil actions. Noviho -- an emigrant from Togo, Africa with no similar political ties and/or high-profile friendships in the community -- was the unfortunate victim of this political conspiracy (Complaint, ¶ 4);

- Inconsistent, exculpatory evidence and material facts/evidence were ignored, concealed, omitted and/or withheld by law enforcement when the seven (7) month "investigation" was closed and charges were filed against Noviho. In fact, during this extended "investigation", Defendant Martin and West's high-profile civil attorney met with various representatives of the District Attorney's office, including Stedman and Defendant Brown. Again, upon information and belief, during this time, Defendant Martin and those acting in concert with him, lobbied for criminal charges to be filed against Noviho, not West and, in doing so,

22

wrongfully abused their personal and political influence with Dissinger, Brown and Stedman.  The last meeting with Stedman and Brown was shortly before charges were filed against Noviho.  Again, those charges were filed for the purpose of enhancing the value of West's and the Martin family's now pending civil actions (Complaint, ¶ 24);

- Defendants Brown and Dissinger filed a knowingly false affidavit of probable cause with the magistrate judge in connection with the issuance of an arrest warrant for Noviho (Complaint, ¶¶ 25-34);

- During the investigation, West told a series of lies which Defendants Dissinger and Brown knew were false (Complaint, ¶¶ 35-40);

- During the investigation, Defendants Brown and Dissinger knew that witnesses were not credible and gave inconsistent statements on material issues (Complaint, ¶¶41-51); and

- Defendant Brown communicated regularly throughout the purported seven (7) month investigation and Noviho's criminal proceedings with West's and the Martin family's civil attorney (Complaint, ¶¶ 34, 36, 38).

These numerous allegations of Defendant Dissinger, Brown and Martin's overt acts, among others, are not stated in conclusory fashion in violation of the Federal Rules of Civil Procedure.  Not surprisingly, Defendant Brown ignores these well-pleaded and specific facts and, instead, accuses Noviho of "shameless, defamatory innuendo and rank speculation". (Supporting Brief at p.14).  In light of the specific conspiratorial facts set forth above and more fully in the Complaint, this attack is simply not credible.  In fact, from these well pleaded facts, reasonable jurors can, and indeed should, conclude that Defendants Brown, Dissinger and Martin conspired to violate Noviho's civil rights.  In short, Noviho's Complaint provides a specific, detailed account of the conspiracy to unlawfully charge Noviho with vehicular homicide and aggravated assault by vehicle, and the personal and political reasons behind it.  Accordingly,

Defendant Brown's motion to dismiss the conspiracy claims set forth in Counts IV and V should be denied.

### D.  Monell Claim (Count VI).

Defendant Brown's final contention is that Noviho's <u>Monell</u> claim against Lancaster County in Count VI fails as a matter of law because Noviho has failed to state claims for the underlying constitutional violation of unlawful seizure, wrongful arrest, false imprisonment and/or malicious prosecution.  (Supporting Brief at p.15).  Again, this argument is predicated upon a finding that his position concerning these underlying Counts is correct.  As argued at length above, this argument is misguided, and Noviho has sufficiently sets forth plausible claims for unlawful seizure, wrongful arrest, false imprisonment and malicious prosecution.

### III.   <u>CONCLUSION</u>

For any or all of the foregoing reasons, Plaintiff Mawuyrayrassuna Emmanuel Noviho respectfully requests that the Motion to Dismiss filed in the above-captioned action by Defendants Lancaster County, Todd E. Brown and Scott F. Martin be DENIED, in its entirety.


Respectfully submitted,

**WRIGHT & REIHNER, P.C.**


By:  <u>/s/ George A. Reihner                    </u>
George A. Reihner
Frank J. Tunis, Jr.
148 Adams Avenue
Scranton, PA  18503
(570) 961-1166
(570) 961-1199 – fax

Dated:  September 14, 2015        Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I, George A. Reihner, hereby certify that I have caused to be served this day a true and correct copy of this Brief in Opposition to Motion to Dismiss on all counsel and/or parties of record <u>via</u> the Electronic Filing system of this Court.


/s/ George A. Reihner_____
George A. Reihner

Dated:  September 14, 2015