# EXHIBIT "B" PART 9

To the contrary, there was exhaustive expert testimony from which the finder of fact could determine when Noviho entered the roadway. The electronic control module (ECM) from the tractor provided detailed data for the two-minute period of time surrounding the collision. (N.T. at 610-11.) At precisely 17 seconds before impact with the West vehicle, Noviho's tractor was in a stopped or idling position, with the brakes and clutch engaged. (Id. at 617, 625.) At precisely 16 seconds before impact with the West vehicle, Noviho's tractor started moving. (Id. at 618-19; see also Commonwealth Exhibit 19.) The data shows that the tractor traveled 197 feet over the course of 16 seconds at a top speed of 17 mph before the collision occurred. (Id. at 617-21.)

The Commonwealth's expert, Officer Kondras, presented the three possible scenarios for how and when Noviho entered the highway from his assumed position on the berm[21]; none of which was, in his opinion, safe given the speed of oncoming vehicles. (N.T. at 627.)

> [Noviho] either pulls out and immediately cuts over into the lane and is going 2 miles, 3 miles an hour[.] [O]r he slowly pulls out and does a . . . very slow, steady movement over. And then if he's halfway through it, he's going 8, 11 miles an hour.
> Or he drives up the shoulder . . . and at the last second before impact he cuts over and immediately into the right lane. He's going 15 to 17 miles an hour at that point and . . . he essentially would have cut right in front of Ms. West's vehicle as he gets over.

(Id. at 628-29.) Based upon this information, Officer Kondras opined that "clearly it was unsafe to pull out. There's no safe time." (Id. at 628.)

---

[21] As noted previously, the ECM established that the tractor was stopped but it could not verify whether it was on or off the highway. (N.T. at 615-17, 621, 626.) The logical assumption is that the tractor was pulled off onto the shoulder of the roadway. The alternative, stopping a vehicle in a lane of travel on a 65 mph highway at night, is almost too ludicrous even to suggest.

This electronic data was confirmed by the eyewitness testimony of Schlinkman who stated that the time and distance that elapsed from Ms. West's headlights illuminating the tractor and the collision was "[n]o more than a second" (N.T. at 387), "instantaneous" (Id. at 388-89), "maybe a car length and a half." (Id. at 390.) The other witness, Levisky, testified that she heard the crash *first* and then "saw the headlights hit whatever was in front of it." (Id. at 245; *see also* Id. at 249.) She could not even identify the object as another vehicle until after she had brought her car to rest in the grass median. (Id. at 250, 252.)

There was sufficient testimony to support the finding that the tractor was standing either on the highway, or on its berm, at 17 seconds prior to impact, and that sometime during the next 16 seconds, Noviho operated his vehicle from a dead stop onto the 65 mph highway before such movement could be made with safety.

### 4.  Weight of the Evidence

Noviho also claims this Court's guilt determinations were against the weight of the evidence. This issue is waived, however, because Noviho failed to raise it properly at the conclusion of trial or in a post-sentence motion.

The Pennsylvania Rules of Criminal Procedure apply to the summary offenses in this case arising under the Motor Vehicle Code.[22] Accordingly, the Rules governing

---

[22] The case before this Court was a "court case" within the meaning of the Pennsylvania Rules of Criminal Procedure because Noviho was charged with felony offenses and summary offenses. Rule 103 defines the term "court case" as "a case in which one or more of the offenses charged is a misdemeanor, felony, or murder of the first, second, or third degree." Pa.R.Crim.P. 103. By contrast, "summary case" is defined as "a case in which the *only* offense or offenses charged are summary offenses." Id. (Emphasis added). The Comment to

23